■ Peconic Avenue Businessmens' Association, Appellant, v Town of Brookhaven et al., Respondents. — In an action, *inter alia*, to declare article X (§ 60, subd [T], par 3) of the Uniform Code of Traffic Ordinances of the Town of Brookhaven unconstitutional, plaintiff appeals from a judgment of the Supreme Court, Suffolk County (Geiler, J.), dated October 19, 1982, which, after a nonjury trial, declared the ordinance to be constitutional and denied plaintiff's application for a permanent injunction against the enforcement of that law. Judgment reversed, on the law and the facts, without costs or disbursements, it is declared that the subject ordinance is unconstitutional, and plaintiff's application for a permanent injunction against the enforcement of the law is granted. The ordinance plaintiff challenged prohibits trucks in excess of 5,000 pounds from utilizing a two tenths of a mile portion of Peconic Avenue lying between Route 112 and Buffalo Avenue in the Town of Brookhaven. The restricted portion of Peconic Avenue runs through an area which contains 20 single-family residences, 13 of which face the road. East of the restricted portion, Peconic Avenue runs for about a mile and a half through an area zoned "Industrial 1" which contains open-air industries that require large land areas to accommodate scrap metal and recycling yards, fuel oil and propane gas storage yards, concrete transit-mix production facilities and car parts warehouses. The ordinance (Uniform Code of Traffic Ordinances of Town of Brookhaven, art X, § 60, subd [T], par 3) prohibits trucks from using the shortest route between this industrial area and the Long Island Expressway. Use of the alternate route increases the distance from the expressway by about 3.3 miles. Plaintiff, an association of businessmen in the area, has brought this declaratory judgment action attacking the constitutionality of the ordinance alleging that it is not reasonably related to the town's police powers and that the extra expense involved in using the alternate route together with the resulting decrease in the value of industrial property constitutes a taking without compensation. At the trial, plaintiff adduced the testimony of a planning consultant, Frederick Meyer, who attributed importance to Peconic Avenue as a "connecter" highway for access to the Long Island Expressway. According to Meyer, the open-air industries abutting Peconic Avenue existed there since as early as 1955 and the new route required to be taken as a result of the ordinance also passes residences. Meyer also testified that the surface of Peconic Avenue was as good as that of the alternate route and its width was adequate to accommodate all vehicular traffic. Plaintiff's real estate expert testified that the circuitous alternate route reduced the values of the industrial property by 35% and the alternate route passed through an intersection that was dangerous because of the topography and insufficient sight distance. One of the industrial property owners testified that the extra distance involved in the alternate route cost his business an additional $45,000 per year. The parties stipulated that, if called, the owners of the other approximately 40 businesses in the industrial area would have testified similarly. In response, the town produced a witness who resided in a house adjacent to the restricted portion of Peconic Avenue. She testified that on April 3, 1980, between 8:00 A.M. and 9:04 A.M., 20 trucks passed her house. This information had been presented by her to the town board at one of its meetings and it is apparent that the ordinance was the legislative response to her statement. The town's traffic safety engineer testified that the ordinance was enacted because of "traffic safety observations along with requests from residences in and around the area". While this witness referred to "studies that were made through the years", his testimony specifically mentioned only time-gap studies involving average waiting or delay times of vehicles entering certain intersections in the area, conducted after the enactment of the ordinance. These studies indicated that there were sufficient gaps in traffic to enable safe passage into the

intersection located on the alternate route which had been characterized as dangerous by plaintiff's witnesses. Although the engineer disputed the severity of the sight distance problem at that intersection, he did admit that the intersection was "a bad situation" which should be avoided. Nothing else was offered by the town. Special Term declared the ordinance to be constitutional, reasoning that the high volume of truck traffic in the residential area, together with an increased incidence of traffic accidents, constituted a reasonable basis for adoption of the ordinance. We reverse, concluding that, on this record, the ordinance bears no real or substantial relationship to the public welfare. We therefore declare it to be unconstitutional. The general power of a town to enact a reasonable ordinance to prohibit certain classes of vehicles from passing over designated streets is beyond doubt (see Vehicle and Traffic Law, § 1660, subd [a], par 17; *Bakery Salvage Corp. v City of Lackawanna,* 24 NY2d 643; 7 McQuillin, Municipal Corporations [3d ed], § 24.616). The ordinance, valid on its face, carries with it a strong presumption of constitutionality (see *Lighthouse Shores v Town of Islip,* 41 NY2d 7) but the police power of a town to regulate use of its streets is not unlimited (*People v Grant,* 306 NY 258), for every police power enactment must be reasonable (*French Investing Co. v City of New York,* 39 NY2d 587, 595). In the face of the strong presumption of validity, plaintiff has a heavy burden to demonstrate that the ordinance has no substantial relationship to the public health, safety or general welfare (*Town of North Hempstead v Exxon Corp.,* 53 NY2d 747; *Northern Westchester Professional Park Assoc. v Town of Bedford,* 92 AD2d 267). To establish that a legislative enactment is unreasonable, it must be shown that it is arbitrary — that there is no reasonable relation between the end sought and the means used to achieve that end (*French Investing Co. v City of New York, supra,* p 596). It is well settled that the legislative body is presumed to have investigated and found facts necessary to support the legislation (*Matter of Malpica-Orisini,* 36 NY2d 568, 571, app dsmd *sub nom. Orsini v Blasi,* 423 US 1042) and judicial power of inquiry ends if there are any facts known or reasonably to be perceived which justify the legislation (*Town of Huntington v Park Shore Country Day Camp,* 47 NY2d 61, 66). Here, the town failed to adduce any facts to support its enactment and on this record none may be reasonably inferred. The town simply neglected to offer proof relative to the dangers potentially associated with truck traffic passing through residential neighborhoods. Thus, there was no evidence concerning noise, air pollution, the safety of children or others crossing the street or even as to the unsuitability of the roadway for truck traffic (cf. *People v Randazzo,* 60 NY2d 952; *Bakery Salvage Corp. v City of Lackawanna,* 24 NY2d 643, *supra;* see *Benco Transp. v Incorporated Vil. of Brookville,* 228 NYS2d 38; *Red Riv. Constr. Co. v City of Norman,* 624 P2d 1064 [Okla]). The record establishes that Peconic Avenue is sufficiently wide and well enough paved to easily withstand the passage of truck traffic. No evidence was offered as to the volume of truck traffic in the restricted area and no conclusions can be drawn from the fact that 20 trucks passed someone's house in 64 minutes of one day. Nothing in the record supports Special Term's finding that there was an increased incidence of traffic accidents due to the passage of trucks and the record contains no mention of traffic accidents. On the other hand, plaintiff demonstrated the suitability of Peconic Avenue for truck traffic, that its property values were severely depressed by the restrictive ordinance and that the alternate route posed dangers to its truck drivers. While the significant economic burden imposed on the members of the plaintiff association does not by itself invalidate the law (*Cities Serv. Oil Co. v City of New York,* 5 NY2d 110, 117), private and public convenience must be balanced in determining the reasonableness of the exercise of the police power (*French Investing Co. v City of New York, supra,* p 596; *Bakery Salvage Corp. v City of*

*Lackawanna, supra,* p 646). In *Bakery Salvage Corp. (supra),* the restricted street was too narrow for trucks to pass safely, there was a demonstrated deterioration in the street and damage to homes due to truck usage and evidence was presented that children played extensively in the street. There, the burdens imposed on the truck owners were certainly overridden by the need to protect the safety of the public. Had the town produced evidence of similar facts at the instant trial demonstrating a public safety purpose for its ordinance we would have assumed that such information was available to the town board when it enacted the ordinance (see *Town of North Hempstead v Exxon Corp.,* 53 NY2d 747, 756 [Fuchsberg, J., concurring], *supra*). In such circumstances, the economic burdens imposed on plaintiff's members would have been justified because of the benefits to the general public (see *Health Ins. Assn. v Harnett,* 44 NY2d 302, 310). There are no facts that demonstrate a real or substantial relationship to the public safety. Moreover, in light of the hazards posed by the alternate route for trucks, the town did not even provide an adequate and suitable alternate route (see *People v Grant,* 306 NY 258, *supra; Associated Transp. v City of Syracuse,* 274 App Div 565; *Gotham Sand & Stone Corp. v Incorporated Vil. of Roslyn,* 20 Misc 2d 478; 1976 Opns Atty Gen [Inf Opns] 308). Accordingly, we conclude that the law encroaches on the exercise of private property rights without substantial relation to a legitimate governmental purpose and it should be declared unconstitutional. Damiani, J. P., Titone, Lazer and Mangano, JJ., concur.