■ WHITE PLAINS AUTOMOTIVE SUPPLY COMPANY, INC., et al., Appellants, v CITY OF PEEKSKILL, Respondent.—In an action to declare a local traffic ordinance unconstitutional, plaintiffs appeal from a judgment of the Supreme Court, Westchester County (Marbach, J.), dated December 20, 1984, which, *inter alia,* upheld the ordinance after a nonjury trial.

Judgment affirmed, with costs.

Plaintiff White Plains Automotive Supply Company, Inc. (WPA) operates a wholesale automotive parts supply business out of a warehouse leased from plaintiff Dorlee Property Corp. (Dorlee) and located on a dead-end street in the Town of Cortlandt, Westchester County. The only access to the warehouse is through a residential neighborhood in the defendant City of Peekskill (the city). At issue is whether a local traffic ordinance enacted by the city, limiting the use of streets in the access neighborhood to commercial vehicles of less than 27 feet (except in an emergency or for moving residential personal property), is a valid exercise of the police power pursuant to Vehicle and Traffic Law § 1640. Upon a prior review by this court, the matter was remitted for an evidentiary hearing to determine whether the effect of the ordinance in promoting the health, safety and welfare of the community outweighed the hardship caused to individual property owners *(White Plains Automotive Supply Co. v City of Peekskill,* 98 AD2d

776). Following that hearing, nisi prius found and declared the ordinance to be constitutional. We now affirm.

It is beyond cavil that a city has the right and power to enact a reasonable ordinance to prohibit certain classes of vehicles from passing over designated streets (see, *Bakery Salvage Corp. v City of Lackawanna,* 24 NY2d 643; *Peconic Ave. Businessmens' Assn. v Town of Brookhaven,* 98 AD2d 772, 773). Such an ordinance, valid on its face, carries with it a strong presumption of constitutionality (see, *Elmwood-Utica Houses v Buffalo Sewer Auth.,* 65 NY2d 489; *Lighthouse Shores v Town of Islip,* 41 NY2d 7), and in light of this strong presumption, a plaintiff attacking the ordinance carries the heavy burden of demonstrating beyond a reasonable doubt that the legislative enactment is arbitrary—that it has no substantial relationship to the public health, safety or general welfare (see, *Northern Westchester Professional Park Assoc. v Town of Bedford,* 60 NY2d 492, 500; *Town of North Hempstead v Exxon Corp.,* 53 NY2d 747; *French Investing Co. v City of New York,* 39 NY2d 587, 596, *cert denied* 429 US 990).

At the hearing, evidence was presented of the unsuitability of the 21- to 24-foot wide residential streets for traffic by large (mostly 40-foot and over) trailer trucks (these trucks would, for instance, swing wide into both lanes of the street, mount curbs and even swing onto adjacent sidewalks) and of the resulting damage to curbs, sewers, utility lines and trees, as well as of attendant noise, diesel fumes, air pollution, vibration and cracking of plaster. There was also evidence that the city investigated these conditions by hearing from residents, by sending its staff to observe, by conferring with plaintiffs, and by consulting a transportation engineer, and that only after other proposed solutions to these problems, such as construction of new accesses to plaintiffs' property and widening the existing streets with concomitant taking of private property, proved to be impractical and cost prohibitive did the city enact the subject ordinance. There was further evidence that the city set the truck-length limitation at 27 feet for reasons of safety as well as to "allow trucks for local deliveries and trucks such as United Parcel Service trucks". Unlike the case of *Peconic Ave. Businessmens' Assn. v Town of Brookhaven (supra),* where no facts in support of the ordinance were adduced, here ample evidence was offered relative to dangers associated with truck traffic passing through the residential neighborhood as well as the city's efforts to explore alternative possibilities and adjust equities between the residents and the plaintiffs, who require deliveries. Inasmuch as the plaintiffs

did not rebut the evidence supportive of the ordinance, as nisi prius noted, they failed to undermine in any way the substantial relationship of the ordinance to the public welfare *(see, Bakery Salvage Corp. v City of Lackawanna, supra)*.

Nevertheless, the plaintiffs contended at nisi prius that the ordinance was unconstitutional in that it deprived them of property rights without due process of law, adducing evidence, *inter alia,* that the ordinance would diminish the value of Dorlee's property, valued close to $1,000,000, by some $300,000 (nisi prius found the diminution in value to be $200,000), and has induced tenant WPA to relocate its operations to The Bronx. Concededly, the exercise of the police power is limited by the due process clauses of the State and Federal Constitutions, and an ordinance, to pass muster, must not only relate to the purpose for which it was enacted but must not unreasonably deprive an owner of all beneficial use of its property *(see, Modjeska Sign Studios v Berle,* 43 NY2d 468, 474, *appeal dismissed* 439 US 809; *French Investing Co. v City of New York,* 39 NY2d 587, 594-596, *supra; Salamar Bldrs. Corp. v Tuttle,* 29 NY2d 221, 225; *Vernon Park Realty v City of Mount Vernon,* 307 NY 493, 499). Plaintiffs' contention, however, was properly rejected.

As an initial matter, the $200,000 diminution in property value, Dorlee's only loss credited by nisi prius, while scarcely *damnum absque injuria,* does not evince a deprivation of "all beneficial use of its property" to automatically void the ordinance. In any event, whatever economic fallout the ordinance indirectly visits on the plaintiffs, it does not reach the level where the plaintiffs' claims should override the safety of residents and an otherwise valid ordinance designed to promote the safety and welfare of the public *(see, Health Ins. Assn. v Harnett,* 44 NY2d 302, 310; *Bakery Salvage Corp. v City of Lackawanna, supra; Cities Serv. Oil Co. v City of New York,* 5 NY2d 110, 117, *cert denied* 360 US 934; *Sauer v City of New York,* 180 NY 27, 32-33, *affd* 206 US 536). This is all the more so when one takes note that the property in question originally had alternative access to New York Route 9, that the prior owners apparently received compensation from the State when the alternate access was eliminated, and that Dorlee purchased the property with full knowledge that the only access was through the narrow neighborhood streets, presumably at a price reflecting the limited access with a possibility of further limitation *(cf. Bakery Salvage Corp. v City of Lackawanna, supra)*. Lastly, in this connection, we find it not without significance that Dorlee's property is located in

the Town of Cortlandt, not the City of Peekskill, for, as the Court of Appeals stated of a similar situation in *Bakery Salvage Corp. v City of Lackawanna (supra,* at p 647), "it does not seem unreasonable for the town to which plaintiff pays substantial taxes to provide for plaintiff and other owners in its industrial zone access roads which would avoid an unreasonable use of the street in the neighboring city in violation of its local laws and ordinances".

We have considered plaintiffs' remaining argument based on the commerce clause and find it to be without merit *(cf. Kassel v Consolidated Freightways Corp.,* 450 US 662, 669-670; *Hospital Bldg. Co. v Trustees of Rex Hosp.,* 425 US 738). Mangano, J. P., O'Connor and Weinstein, JJ., concur.

Thompson, J., dissents and votes to reverse the judgment appealed from and to declare City of Peekskill Traffic Ordinance § 132-41 to be unconstitutional, with the following memorandum: In my opinion, the subject traffic ordinance limiting the use of streets in the Bleloch Park section of the City of Peekskill to commercial vehicles of 27 feet or less in length (with certain exceptions not applicable here) constitutes a deprivation of plaintiffs' property rights without due process of law in violation of constitutional limitations. The evidence adduced at the trial amply demonstrates that the ordinance effectively deprives the plaintiffs of all reasonable use of the subject property without any corresponding manifestation that it promotes public safety.

In 1973 plaintiff Dorlee Property Corp. (Dorlee) began leasing an 11.8-acre parcel of property improved with a complex of three industrial buildings located in the Town of Cortlandt at the southern boundary of the City of Peekskill. In 1979 Dorlee purchased the subject premises. Since 1973, White Plains Automobile Supply Company (WPA), an automotive-supply business owned and operated by Dorlee's principals, has leased one of the buildings on the premises and part of another. The third building on the premises has been leased since 1981 to Consolidated Offset, a commercial printer.

The subject property is situated in a district designated "M-1, Light Industrial". This designation was accomplished by resolution in 1963. The area surrounding the subject property is essentially residential in character and has remained so throughout the period of Dorlee's possession. Prior to plaintiffs' possession of the subject property, access to the property was possible directly from Route 9. However, in the 1960's Route 9 was reconstructed and access from Route 9 to the

subject parcel was completely severed. Thereafter, the only vehicular access to this property was through the residential streets of Bleloch Park in the City of Peekskill.

The testimony adduced at the trial indicates that Dorlee derives its income exclusively from rental of space at the subject property and owns no other parcel of property from which it derives a regular income. WPA received deliveries of automobile parts from suppliers in the south and midwest. Generally, WPA's deliveries were made in trucks in the 40- to 45-foot range. Deliveries to Consolidated Offset also were generally in trucks larger than 27 feet in length.

At the trial, plaintiffs further adduced the testimony of two real estate experts who agreed that the best possible use of the subject premises was for industrial purposes and that enforcement of the ordinance would result in a drastic reduction in the property's utility, value and marketability. The testimony was to the effect that a diminution in market value of $303,000 and in net income of $33,922 would result from enforcement of the ordinance. Income from the property after enforcement of the ordinance would not cover all operating expenses and debt service so that such enforcement would force plaintiffs to operate at a substantial loss.

Since the instant dispute arose, WPA has made an effort to mitigate its damages and continue its operations by consolidating most of its business into a building located in The Bronx. Although its profits were up, at the time of the trial WPA continued to pay $108,000 annually for rental of the virtually unused warehouse at the subject premises. WPA incurred expenses of $110,000 in its move to The Bronx and has lost customers. It also incurred added expenses in transportation costs to service its northern customers.

Enforcement of the ordinance essentially makes impossible WPA's continued operations at the subject premises. The owner of Consolidated Offset, Dorlee's other industrial tenant, also testified that enforcement of the ordinance will put him out of business because his company's current financial status renders moving to a new location impossible.

WPA has conducted its business at the same location for many years without incident. It was not until the summer of 1980 that a problem with the local residents developed. At that time, one of the local residents began parking his car at a strategic point on an access road making impossible the passage of trucks attempting deliveries to the subject premises. Requests to have the car moved were unsuccessful.

In response to the complaints of neighboring residents, plaintiffs and representatives of the City of Peekskill and the Town of Cortlandt entered into discussions to consider possible solutions to the truck-traffic problem. Among the proposals considered were improving the existing access routes to accommodate the truck traffic; construction of alternate access routes so that Bleloch Park could be avoided; building access directly onto Route 9; and establishment of a transshipment depot where deliveries to WPA could be removed to smaller trucks. The City of Peekskill and the Town of Cortlandt considered the construction of an alternate route or improvement of existing routes to be too expensive despite plaintiffs' offer to pay one half of any construction costs. Plaintiffs considered the transshipment depot to be prohibitively expensive.

Thereafter, the City of Peekskill adopted the ordinance in question as a legislative response to its residents' complaints.

To counterbalance the testimony of plaintiffs' witnesses demonstrating the severe economic impact of the ordinance upon the plaintiffs, the city offered the testimony of several local residents. In substance, the residents' testimony was to the effect that the trucks are noisy, emit exhaust fumes which sometimes necessitate the closing of windows when the trucks pass, break tree branches, mount the curbs to execute turns, and cause vibrations. However, the record is devoid of evidence of any health risks or physical dangers associated with the truck traffic in the Bleloch Park neighborhood. None of the witnesses could recall any accidents involving trailer trucks on those streets in the 11 years of WPA's operation. The Mayor of Peekskill expressed a fear that someone was going to be killed and that the ordinance was passed, *inter alia,* to protect public safety. Nevertheless, contrary to the majority finding, no evidence was adduced to support the Mayor's testimony. In fact, Police Department accident reports for the period 1980 to 1984 reflect only one occurrence involving a trailer truck and that accident involved a truck hitting an overhanging tree branch. Nor is there any evidence in the record that children play in the affected streets or are endangered by the truck traffic. In view of the gap in the offer of proof, I simply cannot agree with the majority that the ordinance, which will in effect deprive the plaintiffs of all beneficial use of the property, was properly declared to be constitutional and valid as to the plaintiffs.

The applicable principles of law are set forth by the majority, i.e., that an ordinance is cloaked with a presumption of

constitutional validity *(see, Lighthouse Shores v Town of Islip,* 41 NY2d 7)*, which presumption is rebuttable by proof beyond a reasonable doubt of the ordinance's unconstitutionality *(see, Northern Westchester Professional Park Assoc. v Town of Bedford,* 60 NY2d 492, 500). Equally well established, however, is that for an ordinance to be upheld as a proper exercise of a municipality's police power, the ordinance must reasonably relate to the purpose for which it is enacted. Determination of reasonableness is not governed by any bright-line standard. Nevertheless, an analytical framework has evolved from the decisions in this area and was articulated by the Court of Appeals as follows: "[A] land use regulation * * * is deemed too onerous when it 'renders the property unsuitable for any reasonable income[,] productive or other private use for which it is adapted and thus destroys its economic value, or all but a bare residue of its value' " *(Spears v Berle,* 48 NY2d 254, 262, quoting *French Investing Co. v City of New York,* 39 NY2d 587, 596).

Applying these principles to the case *sub judice,* I conclude that plaintiffs have successfully rebutted the presumption of constitutionality of the ordinance and have demonstrated its unreasonableness. The ordinance effectively destroys the economic value of the subject property without any demonstrated benefit to public safety. There is no other route into the premises other than through the streets restricted by the ordinance. The property is best suited for its current use and its market value would be drastically reduced by a lack of truck access. In fact, the evidence adduced at trial demonstrates that the property would be operated at a loss if it could not be effectively utilized for industrial purposes. Moreover, Trial Term's finding that the impairment of the property's value resulted from the State's termination of access from Route 9 is erroneous. Route 9 was rerouted a number of years prior to Dorlee's acquisition of the premises so that the diminution in value attested to by plaintiffs' real estate experts is measured by the property's economic use as of the time of plaintiffs' possession *(cf. Bakery Salvage Corp. v City of Lackawanna,* 24 NY2d 643).

The similarity between *Peconic Ave. Businessmens' Assn. v Town of Brookhaven* (98 AD2d 772) and the present matter supports a determination of unconstitutionality. While the majority claims that the *Peconic Ave.* case is distinguishable, I read the evidence adduced a trial in a different light. In the *Peconic Ave.* case, this court held unconstitutional an ordinance prohibiting trucks over 5,000 pounds from utilizing

certain streets due to the failure of proof as to any factual justification for such regulation. Relative to its decision, the court noted that the property values were severely depressed by the restrictive ordinance, the alternate route posed dangers to truck drivers and no evidence of the dangers associated with truck traffic through residential neighborhoods was evident in the record.

Similarly, at bar, the evidence of danger to public safety relative to truck traffic is insufficient to justify the ordinance at issue. While the disagreeable quality of truck traffic to local residents in the affected area in unquestionably supported by the record, I cannot share in the majority's view that conclusions as to the dangers posed by the truck traffic sought to be enjoined may be drawn from the testimony presented.

Unlike the situation presented in *Bakery Salvage Corp. v City of Lackawanna* (24 NY2d 643, *supra*), in which the validity of an ordinance restricting to 10,000 pounds the weight of trucks operating on certain residential streets was upheld, in Bleloch Park there are sidewalks and there is no evidence that children play in the streets. Moreover, in the *Bakery Salvage* case the company challenging the ordinance had purchased property at a modest price before truck access was terminated. However, the purchaser bought the property with full knowledge that access to the Thruway was going to be cut off and thereafter the trucks would have to use unsuitable residential streets (24 NY2d 643, 646, *supra*). At bar, the property was purchased long after access to Route 9 was terminated and the plaintiffs have operated many years at that site without incident.

In sum, the ordinance is unreasonable because it blocks the only means of entry to plaintiffs' property to trailer-truck traffic. The record demonstrates that the ordinance merely serves as a private convenience to the residents of Bleloch Park without any corresponding manifestation of public safety. Given the lack of evidence that the ordinance promotes more than public convenience or preference, it unreasonably deprives plaintiffs of their property without due process of law and is, therefore, invalid.