THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
WILLIAM J. GRANT, Appellant.

Argued October 21, 1953; decided January 15, 1954.

*Charles E. Powers* and *Joseph M. O'Loughlin* for appellant. I. The town board of North Hempstead lacked authority to enact an ordinance closing public streets to through or transient traffic. (*Sperling* v. *Valentine,* 176 Misc. 826; *Decker* v. *Goddard,* 233 App. Div. 139; *People* v. *City of Hornell,* 256 App. Div. 113, 282 N. Y. 555; *People* v. *City of Buffalo,* 152 Misc. 375; *Great Atlantic & Pacific Tea Co.* v. *City of New York,* 173 Misc. 470; *People* v. *City of New York,* 245 App. Div. 77; *People* v. *Corwin,* 304 N. Y. 362; *People* v. *County of Westchester,* 257 App. Div. 769, 282 N. Y. 224; *Jewish Consumptives' Relief Soc.* v. *Town of Woodbury,* 230 App. Div. 228, 256 N. Y. 619; *Associated Transport, Inc.,* v. *City of Syracuse,* 196 Misc. 1031.) II. The ordinance, by favoring a select group to the detriment of remaining motorists, violates the New York Constitution and the Fourteenth Amendment to the United States Constitution. (*Myer* v. *Myer,* 271 App. Div. 465, 296 N. Y. 979; *Mallary, Inc.,* v. *City of New Rochelle,* 184 Misc. 66, 268 App. Div. 878; *Town of Galen* v. *Clyde & Rose Plank Road Co.,* 27 Barb. 543; *People* v. *Kerr,* 27 N. Y. 188; *City of New York* v. *Rice,* 198 N. Y. 124.)

*Frank A. Gulotta, District Attorney* (*Henry P. De Vine* of counsel), for respondent. I. The guilt of defendant was established as a matter of law. II. The town board of North Hempstead has the power to enact an ordinance prohibiting " through or transient vehicular traffic " on town streets wholly within the boundaries of the township under the Vehicle and Traffic Law. (*People* v. *City of Hornell,* 256 App. Div. 113, 282 N. Y. 555; *People* v. *Bedell,* 251 N. Y. 415; *Manning, Bowman & Co.* v. *Keenan,* 73 N. Y. 45; *People* v. *Vanderbilt,* 38 Barb. 282; *Cady* v. *Conger,* 19 N. Y. 256; *Porter* v. *International Bridge Co.,* 200 N. Y. 234; *People ex rel. Stranahan* v. *Thompson,* 98 N. Y. 6.) III. The town board of North Hempstead has authority to enact an ordinance prohibiting through or transient traffic on town roads pursuant to the Town Law. (*Sproles* v. *Binford,* 286 U. S. 374; *Bradley* v. *Public Utilities Comm.,* 289 U. S. 92; *People* v. *Keane,* 293 N. Y. 467.) IV. The town ordinance prohibiting through or transient vehicular traffic is not unlawful

class legislation so it does not violate the Fourteenth Amendment of the United States Constitution or the New York Constitution. (*People* v. *Beakes Dairy Co.*, 222 N. Y. 416.)

VAN VOORHIS, J. Appellant has been convicted by a Court of Special Sessions in Nassau County of having violated an ordinance of the Town of North Hempstead which prohibits "through or transient vehicular traffic" on streets within an area in or near the village of New Hyde Park. Appellant questions the validity of this ordinance, without contesting that he did what the language purports to prohibit. The ordinance is challenged upon the ground that it is not a valid exercise of any power which has been delegated by the State to the town board of North Hempstead. In other words, appellant's contention is that this ordinance involves an unauthorized or illegal attempt by a town board to regulate traffic.

The general principle applicable to the delegation of power to local governmental bodies to regulate traffic, is thus summarized in section 24.618 of McQuillin on Municipal Corporations (3d ed., Vol. 7): "The regulation of motor vehicles in their use of streets is an important function of modern municipal government, and is valid where it is reasonable, nondiscriminatory, and authorized by, and not in conflict with, state law * * *. However, municipal power to regulate automobiles and vehicular traffic is not power to prohibit them from using the streets."

Streets pertain to the exercise of a governmental function (*Markey* v. *County of Queens*, 154 N. Y. 675; *People ex rel. Van Keuren* v. *Board of Town Auditors, Esopus*, 74 N. Y. 310, 315). Political subdivisions and municipal corporations hold the fee of streets for the benefit of the public. This refers not alone to adjacent property owners, nor to the inhabitants of the particular political subdivision or municipality, but to the whole people (*People* v. *Kerr*, 27 N. Y. 188, 198, 199; *City of New York* v. *Rice*, 198 N. Y. 124, 128; *Town of Galen* v. *Clyde & Rose Plank Road Co.*, 27 Barb. 543). It signifies that streets are subject exclusively to regulation and control by the State as sovereign, except to the extent that the Legislature delegates power over them to political subdivisions and municipal corporations. In this context, local governing boards are vested only with such

powers as are conferred upon them by statute (*Wells* v. *Town of Salina,* 119 N. Y. 280).

The area through which such traffic is prohibited in the instance of this violation, is shaped in the form of an isosceles triangle, with the apex toward the north, Hillside Avenue forming the base (south boundary) and having as its sides Lakeville Road (east) and the New York City line (west). It consists of about ten blocks and is defined in the ordinance as '' bounded on the north by Seventy-eighth Avenue, east by Lakeville Road, south by Hillside Avenue, west by New York City line.'' This prohibition of through or transient vehicular traffic appears to have been adopted as a result of complaints from residents of this area, who objected to the volume of traffic at particular hours of the day, mainly on account of the large number of automobiles driven by employees of Sperry Gyroscope Company going to and from their work at its plant situated just north of the area. Appellant, a Sperry Gyroscope employee, was convicted of driving his automobile through this area on August 18, 1952, while taking a fellow employee home after work to a location one and one-half blocks west of the area and within the city of New York.

Section 90 of the Vehicle and Traffic Law, entitled '' Powers of local authorities '', confers certain powers to regulate traffic on the legislative bodies of cities, villages and towns. Subdivision 1 thereof confers power on such bodies to adopt ordinances prescribing that vehicles shall proceed in one direction only upon certain streets, or that heavy trucks shall be excluded from certain streets. Subdivision 2 authorizes the designation of arterial highways with stop signs on intersecting streets, and subdivision 5 empowers such bodies to pass ordinances adopting the system of pavement markings duly adopted for State highways. Subdivisions 2-a, 2-b and 3 authorize ordinances regulating the crossing of streets by pedestrians, the removal and storage of vehicles parked or abandoned on public highways during snowstorms or other emergencies, and the closing of streets temporarily due to fires or other emergencies. Subdivision 4 contains the omnibus clause pursuant to which it is claimed that power to enact the present ordinance was delegated to the local body. It reads, insofar as material: '' In

addition to other powers delegated by this article, and subject to the restrictions hereinafter provided, the legislative body * * * is hereby empowered to make, enforce and maintain such additional reasonable ordinances, rules and regulations with respect to traffic, respectively in such city, or village, or in such town outside of any villages therein and not including state highways maintained by the state therein, as special local conditions may require, and to provide penalties therefor ''.

This section contains a paragraph stating that '' Local authorities shall have no power, however, to pass, enforce or maintain any ordinance, rule or regulation inconsistent with the provisions of '' any portion of the Vehicle and Traffic Law. Section 54 states that except as otherwise provided '' local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation * * * excluding any such owner, operator or chauffeur from the free use of such public highways '' except speedways which have been set apart by law for that purpose.

Bearing in mind the principle above mentioned that political subdivisions and municipal corporations hold the fee of streets for the benefit of the whole people, it follows that residents of a particular area in a town or village do not possess and cannot be granted proprietary rights to the use of the highways therein in priority to or exclusive of use by the general public. The language just quoted from section 54 of the Vehicle and Traffic Law is merely an expression of this principle. In convicting appellant, the County Court of Nassau County held this ordinance to be invalid to the extent that it purports to prohibit '' transient '' vehicular traffic in this area, but held that '' through '' traffic was validly proscribed. We are called upon to determine whether a traffic ordinance is '' reasonable '' within the delegation of power contained in subdivision 4 of section 90, which attempts to prohibit all motor vehicles from entering and leaving in any direction, from any point of origin to any point of destination, an area whose boundaries have been fixed by the local authorities without respect to the size, shape or location of the area on any interurban routes, and without designating any thoroughfares through the area for the purpose of conducting such forbidden traffic. This is a broader power than

any of those which are specifically delegated by any of the subdivisions of section 90 of the Vehicle and Traffic Law, and purports to prohibit operators of motor vehicles from the free use of the public highways in the area in contravention of section 54.

If the Legislature intended to confer such power on town or village boards, it did not include it among the enumerated powers in section 90. The draftsman of that section evidently strove to eliminate judicial determinations of invalidity due to failure to include any of the powers specifically delegated. The enumeration of those particular powers would render unnecessary any court actions to determine whether the power to enact ordinances respecting those specific subjects had been intended to be granted by the Legislature. The underlying thought of subdivision 4 appears to have been that by conferring these express powers, it was not meant to limit the generality of the grant of power to adopt such additional reasonable ordinances, rules and regulations as special local conditions might require. Nevertheless, the reasonableness of such additional local enactments or directives may be evaluated and measured by comparing them with the particular powers that were delegated expressly by the other subdivisions. Prohibiting all traffic from passing through any area which the local authorities might define, would involve more drastic restrictions of traffic than anything otherwise authorized by section 90. It would be a more extensive power than excluding heavy trucks from certain streets, leaving open to their use other streets suitable for that purpose, or the designation of one-way streets. The nearest resemblance to any of the enumerated powers is the designation of main arteries for travel, accompanied by the requirement that stop signs be placed upon cross streets. The prohibition of all through traffic from entering a designated area is, however, more severe. The difference is so great that it cannot be said that power to enact this ordinance parallels any of the other powers granted to local authorities by section 90.

The object sought by this ordinance might have been accomplished, to some degree, by establishing arterial highways through this portion of the town or village, and by encourag-

ing through traffic to travel thereon if there were any streets adapted to that object. The only alternate routes suggested by respondent circumvent the area without entering it. One of these suggested routes is considerably longer, and the other, although only two or three blocks more in distance, traverses an inferior pavement full of holes and puddles. Moreover, this area does not appear to be on any particular interurban route to which it is proposed to confine through traffic, but the dominant purpose is to prevent Sperry Gyroscope employees from driving on streets within the area unless they live there. Although the word " transient " was nullified by the County Court, where it appears in the ordinance, that word gives the clue to the object of the whole enactment, which is to reserve the streets for the use of local residents. The elimination of the word " transient " by the County Court does not alter the scope of the ordinance, which, as it has been construed and was manifestly intended, remains the same whether the word transient be regarded as in or out of the language employed.

The reason on account of which no arterial highways were created through the area was probably that the map indicates the existence of no thoroughfares adapted to that purpose in this part of the town or village, nor has it been presented that there is any " through " traffic of an interurban nature, nor that any problem exists concerning traffic intended to be forbidden except Sperry Gyroscope employees driving to and from their work. If such thoroughfares did exist and had been designated as arterial, and if there were real interurban traffic traversing this area, through traffic would use them, and there would be no problem. Without furnishing a substitute to the Sperry employees or to other members of the public, the local authorities have tried to satisfy complaints from the local residents by a blanket prohibition against all travel through the area, in whatever direction, and wherever destined.

In *Associated Transport* v. *City of Syracuse* (274 App. Div. 565, 568) the right of municipalities was recognized to exclude intrastate motor freight carriers from specified streets, but the court said: " Nevertheless such exclusionary ordinances cannot be adopted arbitrarily or capriciously, but must have some basis of necessity, and usually requires the affording of another

route reasonably adequate and useful.'' The necessity to furnish a substitute route was recognized in *Adley Express Co.* v. *Town of Darien* (125 Conn. 501) where it was held that power had not been delegated by statute to close a street in Darien known as Noroton Avenue to trucks, inasmuch as there was no approach to the Boston Post Road available in Darien except over that thoroughfare. In *Commonwealth* v. *Kennedy* (129 Pa. Superior Ct. 149, 158–159) an ordinance was upheld restricting truck routes, the court pointing out that '' ' There are at least three other routes available to the restricted class for entrance and exit to the City which reach the highway, the entrance of which is barred by the ordinance ' '' which '' ' do not contain the same element of danger, particularly in winter, as the route affected by the ordinance in question.' '' This differs from the present case, in which no reasonable basis of classification has been formulated in the ordinance in relation to the public safety, convenience or necessity.

A new subdivision was added to section 90 by chapter 746 of the Laws of 1952, as amended by chapter 616 of the Laws of 1953. That was after the ordinance had been adopted whose validity is questioned in this case. Nevertheless, this new subdivision, designated 1-a, is of some significance as indicating that when the Legislature purports to delegate a power to local legislative bodies more nearly resembling that which the Town of North Hempstead attempted to exercise in this case, the power is more carefully circumscribed and limited. The new subdivision 1-a provides that local legislative bodies may by ordinance or regulation establish a system of truck routes, and direct that all trucks in excess of a certain weight '' shall be excluded from all streets in such city, village or such town outside of any villages therein, except from those streets which form a part of the system of truck routes upon which trucks are permitted to travel and operate '', unless deliveries are to be made on the prohibited streets. It is further commanded that '' Any system of truck routes established pursuant to the authority contained herein shall provide suitable connection with all state routes entering and leaving such city, village or town.'' This subdivision takes account of the circumstance that when the Legislature grants the power to local boards or councils to exclude

through traffic on certain streets, it must be incorporated in some plan which contemplates the existence of main thoroughfares, and is designed to enable vehicles passing through to proceed, with the least practical interference with local traffic, to and from their destinations. Without attempting to construe or adjudicate this amendment to section 90 adopted in 1952, which is now subdivision 1-a, it is sufficient to observe that for present purposes the ordinance of the Town of North Hempstead which is under review bears no indication of having been adopted for such a purpose, but rather to have been designed merely to reserve the streets in the area for the use of the local residents to the exclusion of the public at large. To do so would be an unreasonable exercise of power to regulate traffic.

Parenthetically, it may be remarked that the ordinance speaks of this area as being situated in New Hyde Park, which is a village within the town of North Hempstead. The regulation of the use of streets in a village, of course, could not be assumed by the town board of the town in which the village is situated. In villages, the power to regulate the use of streets is confided to the village board (Village Law, § 89, subd. 44). The powers delegated to local authorities by section 90 of the Vehicle and Traffic Law, with which we are immediately concerned, are delegated to " The legislative body of a city, village, town of the first class or town of the second class ", which means to such bodies respectively having jurisdiction over the area involved. Subdivision 4, which is the paragraph relied upon to enable this ordinance, speaks of empowering the several local authorities to regulate traffic " respectively in such city, or village, or in such town outside of any villages therein ". The last phrase renders explicit that whatever power is conferred upon town boards by this section is limited to local legislation respecting areas in towns outside of villages. The Town of North Hempstead could not legislate in this respect for territory situated within a village, if this area be situated in the village of New Hyde Park, but no point has been made of this in the record or in the briefs, and, for that reason our decision has not been placed upon that ground. By not raising the question, counsel appear to have assumed that the area in question is outside of the village.

The judgments should be reversed, and the information dismissed.

LEWIS, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgments reversed, etc.