OPINION OF THE COURT
Simons, J.
Plaintiffs challenge the validity of Albany City Ordinance No. 5.11.86 which creates a program allowing residents of certain areas of the City of Albany who purchase permits to park in their neighborhoods for periods of unlimited duration but restricts nonresident parking in such areas during weekday business hours to 90 minutes. The ordinance patently discriminates against nonresidents and violates statutory and *100 common-law rules which, we conclude, the City could not modify under existing authority. The ordinance is therefore ultra vires and void.
I
Albany residents have for some time complained about parking problems created by the influx of nonresident State employees who work in the downtown area. The situation has been particularly troublesome during business hours when employees sought free parking in residential districts to avoid parking lot charges and by doing so prevented residents from parking near their homes. Residents were also concerned about safety, noting that the shortage of parking space had become so exacerbated that there was a competitive scramble between drivers for spaces in their neighborhoods.
Responding to these complaints, the City enacted Ordinance No. 5.11.86 (Albany City Code, ch XXV, div 9, §§ 25-114 — 25-118) vesting discretion in the Albany Chief of Police to designate areas as "prepaid parking permit areas”. It is clearly based upon the Arlington County, Virginia, statute which withstood constitutional challenge in Arlington County Bd. v Richards (434 US 5, reh denied 434 US 976). The ordinance provides that residents of parking permit areas may purchase two permits per household for an annual fee of $17.50 each entitling them to unlimited parking in their neighborhoods. They may also obtain permits for their guests, free of charge if they purchased a permit for themselves, or for $2.50 if they did not. Nonresidents, on the other hand, may park in designated areas only for 90 minutes Monday through Friday between the hours of 7:00 a.m. to 6:00 p.m. (excluding holidays) and are subject to a $15 fine for overtime parking.
After the ordinance was passed, plaintiffs, two public employee unions, and several of their individual members, commenced this action to enjoin enforcement of the ordinance and to have it declared void. Supreme Court upheld the ordinance but the Appellate Division reversed, concluding that because it discriminated against nonresidents, the statute was invalid. We granted leave to appeal and now affirm.
II
The general delegation of power to localities allowing them to regulate the highways within their boundaries is contained *101 in article IX, § 2 (c) (6) of the New York Constitution, Municipal Home Rule Law § 10 and Vehicle and Traffic Law § 1604. The Legislature retains ultimate control over the highways, however, and these provisions are expressly made subject to its power to restrict localities and ensure uniform highway regulation throughout the State. Pertinent here are sections 1600 and 1604 of the Vehicle and Traffic Law, which prohibit localities from excluding persons from free use of the highways except to the extent such limitations are expressly authorized by statute. Case law makes clear the types of exclusions foreclosed by these statutes and reveals that in the absence of specific authorization from the Legislature, restrictions on highway use based upon residency — such as that found in the contested ordinance — are prohibited.
Historically, English highways were said to be the King’s and impeding their use was proscribed for his right was one of passage for himself and for his subjects (see, Town of Galen v Clyde & Rose Plank Rd. Co., 27 Barb 543, 551; see also, Cohen v Mayor of City of N. Y., 113 NY 532, 536). Tailoring the English rule to democratic concepts, the common law in New York has restricted local regulation by impressing a public trust upon the streets. The right to use of the highways is said to rest with the whole people of the State, not with the adjacent proprietors or the inhabitants of the surrounding municipality (People v Kerr, 27 NY 188, 199; accord, City of New York v Rice, 198 NY 124, 128). This public right is " 'absolute and paramount’ ” (Cities Serv. Oil Co. v City of New York, 5 NY2d 110, 115, rearg denied 5 NY2d 1041, cert denied 360 US 934; Deshong v City of New York, 176 NY 475, 484). Thus, in People v Grant (306 NY 258, 262), we struck down an ordinance which prohibited transient or through traffic in the Village of New Hyde Park, reasoning that from the common-law proscription it "follows that residents of a particular area in a town or village do not possess and cannot be granted proprietary rights to the use of the highways therein in priority to or exclusive of use by the general public” (see also, People v Randazzo, 60 NY2d 952; Wiggins v Town of Somers, 4 NY2d 215, 218, remittitur amended 4 NY2d 1045, rearg denied 4 NY2d 1046; Atlantic Beach Prop. Owners’ Assn. v Town of Hempstead, 3 NY2d 434, 440, rearg denied 3 NY2d 942).
Noting that our decisions have generally involved traffic restrictions, the City maintains that the common-law rule should only be construed as prohibiting distinctions between *102 residents and nonresidents for matters involving travel; that distinctions may be drawn for parking matters. Neither the case law nor the Vehicle and Traffic Law is so limited, however; both proscribe restrictions on highway "use”, which includes use for parking as well as travel purposes. The general rule is clear: residents of a community have no greater right to use the highways abutting their land— whether it be for travel or parking — than other members of the public and Albany City Ordinance No. 5.11.86, which confers special parking advantages to residents of certain neighborhoods, violates this proscription. The Legislature is free to create exceptions to the general rule or delegate the power to do so to the localities (see, Vehicle and Traffic Law § 1604; see also, Mobil Oil Corp. v Incorporated Vil. of Roslyn Harbor, 69 Misc 2d 79, 84 [Meyer, J.]) but we conclude that it did neither here.
Ill
The City contends that any of three provisions of the Vehicle and Traffic Law supersede the general rule and authorized its enactment of this ordinance. It relies on subdivision (a) (6), (15) and (16) of section 1640.* None of them authorize Ordinance No. 5.11.86.
Paragraph (6) generally authorizes local parking restrictions such as the 90-minute time limit found in the contested ordinance. It does not, however, permit discrimination between residents and nonresidents, a distinction forbidden at common law (see also, Vehicle and Traffic Law § 1200 [indicating parking restrictions should be applied to "persons” generally, and containing no authorization to treat residents and *103 nonresidents differently]). Nor should the power to do so be implied for it is apparent that when the Legislature has intended to authorize exceptions to the general rule, it has done so expressly (see, e.g., § 1640 [a] [17] [sanctioning special parking privileges for handicapped persons]).
Nor does paragraph (15) serve as a basis for the ordinance. It empowers the City of Albany to enact a prepaid parking permit program, but not one which confers preferred status to those in the community. The language of the statute makes no mention of a distinction between residents and nonresidents and the legislative history reveals that the purpose of the statute was simply to allow Albany to phase out parking meters in favor of a permit plan because meters are costly, interfere with refuse and snow removal and are often vandalized (see, e.g., Mem in support of legislation, Bill Jacket, L 1979, ch 435).
The City’s reliance upon the catchall or omnibus provision contained in paragraph (16) is similarly misplaced. Paragraph (16) authorizes enactment of "reasonable” local highway regulations but local restrictions generally are deemed reasonable only if they pertain to matters of public safety (7 McQuillin, Municipal Corporations §24.610 [3d rev ed]). More importantly, the authority conferred under paragraph (16) is expressly made "subject to the limitations contained in the various laws of this state” and our decisions have narrowed its scope even further.
In People v Grant (306 NY 258, supra) we considered a similar omnibus clause in section 90 (4) of the predecessor statute. The prior statute, like the modern version, prohibited exclusions limiting the People’s right to use the streets unless the exclusion was specifically authorized. We expressed concern in Grant that if all "reasonable” regulations were authorized by the catchall, the proscription against excluding persons from using the highways could be swallowed by the omnibus clause. In that case the challenged ordinance precluded nonresidents from traveling through the Village of New Hyde Park. In a broad sense the ordinance fostered the reasonable purpose of ensuring tranquility within the village, but this "reasonable” restriction was the very type at which the proscription against exclusionary rules was directed. To prevent the omnibus clause from overriding the paramount purpose of the statute, we indicated the "reasonableness” of local enactments would be judged "by comparing them with *104 the particular powers that were delegated expressly [to the localities] by the other subdivisions” of the Vehicle and Traffic Law (id., at 263). Doing so, we held that excluding nonresidents from traveling through New Hyde Park was not "reasonable” within the meaning of the omnibus provision because it was a "more drastic” restriction than those specifically permitted (People v Grant, supra). From the Grant analysis both the majority and dissenting members of this court concluded in People v Randazzo (60 NY2d 952, 953, supra) that the omnibus provision only authorizes rules which are "reasonable and nondiscriminatory” ([emphasis added] citing 7 McQuillin, Municipal Corporations, op. cit., § 24.618).
These judicial limitations of the omnibus paragraph defeat the City’s reliance upon it here. Paragraph (16) does not authorize regulations at odds with the laws of the State and our common law forbids according local residents priority in the use of the public streets. Moreover, no provision in section 1640 differentiates between residents and nonresidents, and such a "drastic” distinction should not be upheld based upon the omnibus provision. Finally, because the ordinance patently excludes nonresidents it violates the prohibition against discriminatory restrictions.
IV
Two of the City’s remaining contentions require comment.
First, the City stresses the similarities between its plan and that upheld against constitutional challenge by the Supreme Court in Arlington County Bd. v Richards (434 US 5, supra). However, whether the contested plan could be enacted consistent with the Federal Constitution is not at issue here. The question is one of power. While the Legislature could delegate to the localities power to enact such a plan, it has not done so and the ordinance is ultra vires.
The City also relies upon People ex rel. Village of Larchmont v Gilbert (137 NYS2d 389) and White Plains Automotive Supply Co. v City of Peekskill (115 AD2d 728, affd 68 NY2d 933, appeal dismissed 481 US 1026). Gilbert involved the designation of off-street parking for residents, and thus, unlike this case did not entail use of the public streets. White Plains Automotive upheld a traffic ordinance restricting access to residential streets to vehicles under 27 feet in length because the ordinance was reasonable under the facts of that case and, more importantly, because Vehicle and Traffic Law *105 § 1640 (a) (5) specifically authorizes excluding trucks from local highways. Such specific authorization is lacking here.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

 Vehicle and Traffic Law § 1640 (a) (6), (15) and (16) provide:
"(a) The legislative body of any city or village, with respect to highways * * * in such city or village * * * may by local law, ordinance, order, rule or regulation:
"6. Prohibit, restrict or limit the stopping, standing or parking of vehicles * * *
"15. Provide for the establishment, operation, policing and supervision of a prepaid parking permit system, establishing parking time limits for such permits and fix and require the payment of fees applicable to parking where such a prepaid permit parking system is in operation * * * The provisions of this paragraph shall only be applicable for the city of Albany.
"16. Adopt such additional reasonable local laws, ordinances, orders, rules and regulations with respect to traffic as local conditions may require subject to the limitations contained in the various laws of the state.”