THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v ALAN WEINBERG, Defendant.

Justice Court of Village of Bellerose, Nassau County, November 17, 1988

### APPEARANCES OF COUNSEL

*Audello Pezold & Hirschmann (Thomas Hirschmann* of counsel), for defendant. *Alfred P. Lucia, Jr., Village Prosecutor,* for plaintiff.

### OPINION OF THE COURT

FREDERICK M. REUSS, JR., J.

The defendant, a nonresident of the Village of Bellerose, parked his automobile within the residential district of the Incorporated Village of Bellerose in an unmetered area. In response thereto, the defendant has been charged with a violation of section 204-19 (B) of the Bellerose Village Code. That section of the Code provides, among other things, that "no vehicle shall be parked in the Residential Area * * * unless such vehicles shall bear a permit issued by the Village

Clerk * * * known as the 'Resident Parking Permit' ". As a nonresident of the Village of Bellerose, the defendant is not entitled to the issuance of such a permit.

At his arraignment, the defendant pleaded not guilty and moved to dismiss the information, on grounds of unconstitutionality and illegality. His attorney has now further moved to dismiss the information, pursuant to CPL 170.30 (1) (a) upon the grounds that the information is defective within the meaning of CPL 170.35 (1) (c), because the cited section of the Village Code is said to be unconstitutional or otherwise invalid. He further seeks a declaration to the effect that the cited section is void and unenforceable.

The defendant relies on *New York State Pub. Employees Fedn. v City of Albany* (72 NY2d 96). The People make argument that the cited case is inapplicable and rely on *Gerken v Board of Trustees* (index No. 12162/81, Sup Ct, Nassau County), an unreported action, wherein the judgment of the court stated that the now-attacked section of the Bellerose Village Code "[is] constitutional, valid and enforceable". Judgment in that case was affirmed by the Appellate Division, without opinion, at 97 AD2d 681.[1]

The Incorporated Village of Bellerose consists of approximately 20 square blocks and is divided into a "Residence District" and a "Business District". The defendant maintains a retail establishment in the "Business District".

By local law, the village instituted a system whereby parking was prohibited within the "Residence District", absent a sticker affixed to the parked vehicle or placed on the dashboard of the vehicle so parked. The stickers are available to residents of the "Residence District" and their visitors, with special provision being made for parking by persons rendering services to property within the "Residence District". Thus, parking within the "Residence District" is always available to residents of that district, their visitors and those who call on them for commercial purposes.

---

1. The court has, in reaching its decision, examined the record on appeal in the *Gerken v Board of Trustees* case (index No. 12162/81, Sup Ct, Nassau County, *affd* 97 AD2d 681). The court has also noted the unreported memorandum decision of the Appellate Term in *People v Findlay* (calendar No. 232, Mar. 2, 1981). In that case, the Appellate Term (Farley, P. J., Slifkin and Geiler, JJ.), found that "[c]ourts should not consider the issue of constitutionality of a legislative enactment where there is another ground upon which the case can be determined (See *Marcus Associates, Inc. v. Town of Huntington,* 45 NY2d 501, 505; *People v. Cornish,* 104 Misc. 2d 72)".

In the adoption of the local law, after an extended period of debate, publication and public hearing, the Village Board of Trustees expressed its legislative intent clearly, making legislative findings of fact and setting them forth, at length, in the attacked section.

As set forth in section 204-19 (B) of the Village Code, the Board of Trustees found that "commercial and transient parking appurtenant to the use of the Long Island Railroad Station or appurtenant to the business district of the Incorporated Village of Bellerose is encroaching on the Residence District of the Incorporated Village of Bellerose so as to endanger the safety and welfare of the residents of the Incorporated Village of Bellerose and that such parking is inappropriate to the Residence District of the Incorporated Village of Bellerose".

The Board of Trustees further found that "unlimited and unrestricted parking in the Residence District of the Incorporated Village of Bellerose represents a danger to the safety of the residents of the Village and their property in that such unlimited and unrestricted parking gives the municipal government no valid grounds to question the presence of suspicious vehicles parked on the streets of the Incorporated Village of Bellerose".

Within the "Business District" of the village, there exist some 115 parking spaces, available for the use of merchants and their customers. Additionally, a number of businesses within the "Business District" maintain private parking spaces on their own property. The "Business District" of the Village of Bellerose contains only a limited number of mercantile establishments, most of the area being taken by gasoline service stations and other nonretail shop type businesses.

In its enforcement of the Code provision, the village recognizes the rights of proprietors of nonresidence establishments located within the "Residence District" to the issuance of parking stickers and parking privileges. There is no discrimination against nonresidences which are located within the "Residence District".

The attacked section was drafted approximately 3½ years prior to its adoption, after a number of complaints by residents of the village. The complaints which led to the drafting

of the local law and to its passage were complaints of "burglaries", as well as traffic and parking congestion.[2]

Insofar as argument has been made that the attacked local law is violative of the Equal Protection Clause of the Federal Constitution, the Supreme Court of the United States gave a direct and complete answer in *Arlington County Bd. v Richards* (434 US 5, *reh denied* 434 US 976).

The facts which were found by the Arlington County legislative body, in the enactment of its ordinance, were essentially similar to the findings made by the Board of Trustees with reference to the attacked section, except to the extent that Bellerose Village expanded on those findings by inserting a second basis for the adoption of its local law, to aid the police in the investigation of burglaries and other crimes.

In all regards, the Arlington County ordinance and the Bellerose Village local law are alike in their operation.

In upholding the Arlington County ordinance, the Supreme Court said that "[a] community may also decide that restrictions on the flow of outside traffic into particular residential areas would enhance the quality of life thereby reducing noise, traffic hazards, and litter. By definition, discrimination against nonresidents would inhere in such restrictions". *(Arlington County Bd. v Richards, supra,* at 7.)

The court said that "[t]he Constitution does not outlaw these social and environmental objectives, nor does it presume distinctions between residents and nonresidents of a local neighborhood to be invidious. The Equal Protection Clause requires only that the distinction drawn by an ordinance like Arlington's rationally promote the regulation's objectives. See *New Orleans* v. *Dukes,* 427 US 297, 303 (1976); *Village of Belle Terre* v. *Boraas,* 416 US 1, 8 (1974). On its face, the Arlington ordinance meets this test." *(Arlington County Bd. v Richards, supra,* at 7.)

The attacked section is remarkably similar in its objectives and in its methods to the ordinance attacked in *Arlington*

2. Common sense dictates that, when a crime has been committed, the police investigating that crime would have a valuable tool if provided with a record of automobiles parked near the crime scene and not related to a resident of the village. Indeed, it was a simple parking ticket that led to the apprehension of "Son of Sam". A miscreant who knows that the presence of his automobile is likely to be noted at or near the scene of his deeds is likely to choose another venue for his activities. Practically speaking, the attacked section bespeaks a reasoned approach to the "burglary" problem that was faced by the village, its officials and its residents.

*County Bd. v Richards (supra).* The local law before this court is not violative of the Equal Protection Clause, to the same extent that the Arlington County ordinance is not so violative.

The Supreme Court has seen no violation of the Equal Protection Clause, in circumstances directly on point with those in the present case. This court is compelled to find that there is no violation of the Equal Protection Clause by reason of the enactment and enforcement of the attacked section.

The attacked section is not otherwise constitutionally infirm. There is a legitimate basis for its enactment and for its continued existence.

There is a strong presumption of the validity of a legislative act and the burden rests with he who attacks the act to show that the legislative act is not justified by any reasonable interpretation of the facts. *(Church v Town of Islip,* 8 NY2d 254; *Rodgers v Village of Tarrytown,* 302 NY 115; *Century Circuit v Ott,* 65 Misc 2d 250, *affd* 37 AD2d 1044.)

So long as an enactment has " 'some fair, just and reasonable connection' between it and the promotion of the health, comfort, safety and welfare of society", it should be upheld. *(People v Bunis,* 9 NY2d 1, 4, quoting *People v Gillson,* 109 NY 389, 401.)

The impropriety of an enactment by a local legislative body must be demonstrated beyond a reasonable doubt. As was said by a unanimous Court of Appeals in *Lighthouse Shores v Town of Islip* (41 NY2d 7, 11), an "exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality."

In the same case, the Court of Appeals, while emphasizing that the local law must not be arbitrary, said that "[i]t must be reasonably related to some manifest evil which, however, need only be reasonably apprehended." *(Lighthouse Shores v Town of Islip, supra,* at 11.)

The Court of Appeals said that "[i]t is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed measure, this court's power of inquiry ends. Thus, as to reasonableness, [the defendant has]

the burden of showing that 'no reasonable basis at all' existed for the challenged portions of the ordinance." *(Lighthouse Shores v Town of Islip, supra,* at 11-12.)

To the same effect, that the defendant may not succeed unless he shows that there is no reasonable basis at all for the challenged local law, see *Matter of Van Berkel v Power* (16 NY2d 37, 40), *Wiggins v Town of Somers* (4 NY2d 215, 218-219), *I. L. F. Y. Co. v Temporary State Hous. Rent Commn.* (10 NY2d 263, 269) and *Defiance Milk Prods. Co. v Du Mond* (309 NY 537, 541).

A legislative enactment carries with it a strong presumption of constitutionality and is strongly presumed to be supported by facts known to the legislative body. *(Lincoln Bldg. Assocs. v Barr,* 1 NY2d 413.) As long as there is any state of facts either known or which could be reasonably assumed to support legislation and as long as the legislation bears a reasonable relationship to the protection of the safety, health, morals or welfare, the decision of the legislative body must prevail.

This court cannot and should not substitute its judgment as to the facts for the judgment made by the legislative body. As was stated in *Amsterdam-Manhattan, Inc. v City Rent & Rehabilitation Admin.* (43 Misc 2d 889, 895, *affd* 21 AD2d 965): "In thus testing the constitutionality of a legislative enactment, the judiciary in its role as ultimate arbiter of the constitutionality of a legislative enactment may not arrogate to itself the power of a 'super-legislature to weigh the wisdom of legislation' *(Day-Brite Lighting* v. *Missouri,* 342 U. S. 421, 423). Reasonableness, not wisdom nor desirability, of the Legislature's prescription to prevent or cure the ills of the community is the juridical touchstone *(Ferguson* v. *Skrupa,* 372 U. S. 726)."

"The necessity and advisability of the ordinance is for the legislative power to determine. The presumption is in favor of the ordinance." *(City of Rochester v Macauley-Fien Milling Co.,* 199 NY 207, 211.) The courts should not sit to weigh the wisdom of legislation. Constitutional authority is vested in the legislative bodies, permitting those bodies to experiment with new techniques. They are entitled to their own standards of the public welfare. *(Day-Brite Light. v Missouri,* 342 US 421, *supra; Daniel v Family Ins. Co.,* 336 US 220, 224; *Carolene Prods. Co. v United States,* 323 US 18, 31-32.) In the latter case, it was said (at 31-32) that "the methods which [the legislative body] employs to carry out its purposes are beyond

attack without a clear and convincing showing that there is no rational basis for the legislation; that it is arbitrary fiat." If there is a fair debate possible as to the validity of legislation, its unconstitutionality should not be declared. *(Levitt v Incorporated Vil. of Sands Point,* 6 NY2d 269.)

Insofar as the attacked local law is concerned, the legislative purposes are eminently clear. The village trustees, acting as a legislative body, set forth their purposes for the enactment clearly, at the very commencement of the enactment. They found that the enactment of the local law was warranted by two factors.

The first stated factor was a desire to eliminate traffic and parking congestion and pollution which was threatened by an overflow of traffic and parking from the "Business District" and the Long Island Railroad parking lot into the "Residence District". Were there no other reasons cited by the Board of Trustees, for the enactment of the section, the defendant might well prevail on the arguments he makes. *New York State Pub. Employees Fedn. v City of Albany* (72 NY2d 96, *supra)* would seem to be supportive of the defendant against a naked claim by the village of the authority to regulate parking, in the attacked fashion.

However, the Board of Trustees had other uniquely valid reasons, which it cited for the enactment of the legislation.

The legislative body stated, as a reason for the enactment of the legislation, its uses as a tool for the detection and prevention of burglaries and other crimes within the village and for the apprehension of culprits involved in those criminal activities. It would be impossible to think of any basis for the legislation that has a stronger relationship to the public good, safety and welfare.

The police power, here serving as a basis for the enactment of the disputed section, is the least limitable of governmental powers. *(Matter of Engelsher v Jacobs,* 5 NY2d 370, *cert denied* 360 US 902; *People v Perretta,* 253 NY 305; *People v Ryan,* 230 App Div 252.)

*"Salus populi est suprema lex"* is the maxim most popularly applied to the police power. Expressing that the welfare of the people is the highest law, it stands for a proposition that legislation in response to the demands of strong or preponderant opinion is necessary to the public welfare and is a proper exercise of the police power.

In matters of local concern, the exercise of the police power

is properly delegated to municipal authorities. *(Town of Hempstead v Goldblatt,* 9 NY2d 101, *affd* 369 US 590; *Carollo v Smithtown,* 20 Misc 2d 435.)* The Village of Bellerose has the authority and the right to exercise the police power, as a local matter, where appropriate. Indeed, section 4-412 (1) of the Village Law provides that the Board of Trustees of a village may do all things, by local law, "which shall be deemed expedient or desirable for the good government of the village, its management and business, the protection of its property, the safety, health, comfort, and general welfare of its inhabitants, the protection of their property, the preservation of peace and good order".

The Board of Trustees of Bellerose Village clearly intended to exercise the above-cited powers given it by the Village Law, when it enacted the now-attacked section. The board clearly set forth its reasons for the adoption of the section and its last-cited rationale is clearly an exercise of the trustees' powers under section 4-412 of the Village Law. The Legislature has authorized the village to act, in protection of itself and the property and lives of its residents.

The local law is plainly entitled to the strong presumption of regularity and constitutionality recognized in *Lighthouse Shores v Town of Islip* (41 NY2d 7, 11, *supra).* It is "reasonably related to some manifest evil which, however, need only be reasonably apprehended." The Village of Bellerose is entitled to the full benefit of the further presumption, as set forth in *Lighthouse Shores v Town of Islip (supra,* at 11-12), that the Board of Trustees "has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed [ordinance], this court's power of inquiry ends."

The defendant has not met his burden of showing that there is no reasonable basis at all for the challenged section. That basis existed and continues to exist, in the finding by the legislative body that the enactment was necessary as a tool for the detection and prevention of crime within the residence district of Bellerose Village and as an aid in the apprehension of persons involved in criminal activity.

The attacked section is a valid exercise of the police power by the Board of Trustees of Bellerose Village, in accordance with the authority given it by section 4-412 of the Village Law. It is not constitutionally infirm. At its enactment, the

Board of Trustees made plain the intent of that body, to exercise the police power held by it, in connection with the prevention of burglary and the apprehension of persons suspected of crime committed within its borders.

The defendant's motions, as well as those motions made in writing by his attorney, are denied. Section 204-19 (B) of the Code of the Incorporated Village of Bellerose is valid, enforceable and constitutional.