Robert J. Moore, Esq. Village Attorney, Port Jefferson
You have asked whether a village may establish an off-street parking facility which allows village residents to park for an unlimited time, while nonresidents are subject to a specific time limit.
Your letter notes that the Village of Port Jefferson owns and operates a parking lot located within the village. The lot is open to use, without charge, by village residents and nonresidents alike. Residents, however, may obtain stickers which permit them to park in the lot for an unlimited time. Nonresidents are subject to a time limit and are ticketed if they exceed that limit.
Your question is whether the village can penalize nonresidents for overtime parking while not making residents subject to any overtime parking rules.
The question of whether a municipality may establish a parking area for the exclusive use of its residents has been addressed by the courts. InPeople v Gilbert (137 N.Y.S.2d 389 [Westchester Co Ct], affd 307 N.Y. 773
[1954]), the Court approved such a practice:
 "The court sees no good reason why a municipality should not be permitted to set aside a parking area exclusively for the use of its own residents. The entire expense of such an undertaking falls exclusively upon the inhabitants of the municipality and they should be entitled to preferential treatment in this respect. In People ex rel. Village of Lawrence v. Kraushaar, supra [195 Misc. 487, 89 NYS 688] the court, with respect to parking areas, pointed out that `[r]esidents are entitled to a preference over nonresidents and such action is not in contravention of the equal rights of the citizens of the several localities'" (Gilbert, 137 N.Y.S.2d at 392).
In Kraushaar, the Village of Lawrence established a municipal parking lot and charged most nonresidents $10 a year to park there. Village residents and residents of certain towns outside the village paid $1 per year (Kraushaar, 195 Misc. at 490). The court found that it was reasonable for the village to set two categories of users — resident and nonresident — and treat them differently:
 "It would seem to this court that the village may, without doing violence to the constitutional provisions above quoted [the equal protection clause], impose a license fee of $1 for residents and $10 for nonresident provided there were no discrimination within a class. Residents are entitled to a preference over nonresidents and such action is not in contravention of the equal rights of the citizens of the several localities" (Kraushaar, 195 Misc at 490).
The parking plan in Kraushaar went awry when it deviated from the standard of equal treatment of those persons in the same class. The court found that those persons who were not village residents were not treated equally inasmuch as residents of certain neighboring towns were treated as village residents for purposes of obtaining the lower license rate (Kraushaar, 195 Misc at 491).
The parking plan proposed in your letter, however, appears to avoid the pitfalls met in Kraushaar by dividing users of the parking lot into two classes — resident and nonresident — and treating the members of each class in the same way. Inasmuch as the "right" to park an automobile is not a fundamental one, classifications which affect that right need only have a rational basis (Friedman v Beame, 558 F.2d 1107,1111-1112 [2d Cir, 1977]). As noted in Gilbert and Kraushaar,
distinctions based on residency have a rational basis with regard to the right to use a municipal parking facility.
Finally, we note that this analysis applies only to off-street municipal parking facilities. A municipality may not distinguish between residents and nonresidents for purposes of parking on the municipality's streets (New York State Public Employees Federation, AFL-CIO v City of Albany,72 N.Y.2d 96 [1988]; 1980 Op Atty Gen [Inf] 99; 1970 Op Atty Gen [Inf] 129).
We conclude that a village may establish an off-street parking facility which allows village residents to park for an unlimited time while nonresidents are subject to a specific time limit.