Hon. Michael J. Hoblock, Jr. Formal Opinion No. 99-F1 Chairman Racing and Wagering Board 1 Watervliet Avenue Ext, Suite 2 Albany, N Y 12206-1668
Dear Chairman Hoblock:
Your counsel has asked whether an off-track betting corporation ("OTB") may hold a harness race meeting and, if so, whether it may apply for licensure to conduct pari-mutuel wagering at the track. He has advised us that the Western Regional Off-Track Betting Corporation ("Western OTB") has applied to the Racing and Wagering Board ("Board") for a license to conduct harness race meetings with pari-mutuel wagering at the harness track known as Batavia Downs. Western OTB purchased the assets of the former track operator, including the racetrack site. Specifically, your counsel asks whether an OTB is an entity qualified to conduct harness races under the Racing, Pari-Mutuel Wagering and Breeding Law ("Racing Law") and whether the Board may license it to conduct pari-mutuel wagering.
Harness racing is governed by article III of the Racing Law and is regulated comprehensively by the Board. As you have noted, pari-mutuel harness racing in New York State historically has been conducted by racing corporations or associations formed pursuant to Racing Law § 302 or predecessor statutes; regional OTBs have conducted off-track pari-mutuel betting on horse races conducted by racetrack operators formed pursuant to section 302.
Section 302 of the Racing Law authorizes the creation of corporations "for the purpose of conducting harness horse race meetings at which pari-mutuel betting will be conducted." These corporations are subject to oversight by the Board. The statute requires that certain information be contained in their certificates of incorporation and states that no certificate may be filed "without the approval of the state racing and wagering board indorsed thereon or annexed thereto." Id., § 302(1)-(8). The locations at which such corporations may conduct harness racing is restricted. Id. A corporation formed for the purpose of conducting harness horse race meetings must file notice of any stock transfers or changes in the interests of stockholders with the Board.Id., § 303(1)-(3). Stockholders are required to file affidavits with the Board setting forth any criminal histories. The Board may, after a hearing, direct any stockholder to dispose of stock in such a corporation if it determines that continued ownership is inconsistent with the public interest, convenience or necessity or with the best interests of racing generally. Id., § 303(5), (6).
Corporations formed under section 302 are not the only entities authorized to conduct harness racing. Section 304 of the Racing Law confers the right to hold harness races upon corporations formed under section 302 as well as on certain other entities. It provides in relevant part:
 Any corporation formed under the provisions of sections two hundred twenty-two through seven hundred five of this chapter and any corporation or association which shall have conducted harness horse race meetings during two years prior to March thirty-first, nineteen hundred forty, and any town or county fair association or other fair association shall have the power and the right to hold one or more harness horse race meetings in each year and to hold, maintain and conduct harness races at such meetings. . . . Such power and right, however, shall not include the right to conduct pari-mutuel betting at such harness horse race meetings except pursuant to license granted by the state racing and wagering board pursuant to sections two hundred twenty-two through seven hundred five of this chapter (emphasis supplied).
Western OTB was established by Racing Law §502, which was enacted in 1973. Western OTB asserts that, even though it is not a corporation formed for the purpose of conducting harness racing pursuant to section 302, it is a corporation formed under sections 222 through 705 of the Racing Law and thus qualifies under section 304. Therefore, section 304 is the basis for the claim by Western OTB that it is authorized to hold harness race meetings and apply for a license to conduct pari-mutuel wagering at such meetings. We note that resolution of this claim also will affect other OTBs.[1]
Western OTB relies on the broad reference in section 304 of the Racing Law to "any corporation" formed under the provisions of sections 222-705 for its authority to conduct racing. We recognize that, read in isolation, section 304 could be construed to support this view. Such a reading would be inconsistent, however, with the narrow statutory purpose of OTBs and the specific powers granted to them by law.
Notwithstanding the general provision of section 304, the specific and comprehensive provisions of law establishing and governing OTBs demonstrate that OTBs are not authorized to conduct harness races. See, Racing Law articles V and V-a. OTBs are authorized to "establish and conduct within the region a system of off-track pari-mutuel betting on horse races" subject to any limitations contained in the Racing Law and to the authority of the Board. Id., § 503(10). OTBs were created "to derive from such betting, as authorized by this article, a reasonable revenue for the support of government, and to prevent and curb unlawful bookmaking and illegal wagering on horse races." Id., § 518. Conducting races is not within the stated purpose or authorized activities of OTBs.
OTBs also are empowered to acquire, hold, lease, rent and dispose of personal property for their corporate purpose and to acquire and use real property "which is necessary or convenient for carrying out" their corporate purpose. Id., § 503(3), (4). They are granted authority to "perform such other acts and engage in such other activities as may be necessary and proper for exercising [their] powers and performing [their] duties under this article." Id., § 503(12). These general grants of corporate powers, as is evident in their express language, are intended to permit OTBs to carry out a system of off-track pari-mutuel betting. They cannot be read to grant OTBs the additional power to conduct harness races. See, New York State Public Employees Federation, AFL-CIO v. Cityof Albany, 72 N.Y.2d 96, 103-104 (1988) (catchall statute authorizing all "reasonable" local regulation of highways did not grant city authority to limit nonresidents' access to on-street parking; statutory scheme protected public access and provided municipalities with limited regulatory powers).
If the Legislature had intended to authorize OTBs to conduct races, it could have done so expressly, as it did in the enabling legislation of the New York State Thoroughbred Racing Capital Investment Fund. See, Racing Law § 254(13)(a). The Fund is permitted to "conduct running races, steeplechases or hunt meetings at racing facilities and to conduct pari-mutuel betting on the outcome of the same when necessary to assure the continuation of the racing and pari-mutuel betting activities at such racing facilities" in specific circumstances. Id.
In addition, we note the statutory powers of OTBs have been narrowly construed. See, Op St Compt No. 81-74 (predecessor to § 503 did not authorize an OTB to purchase real property for resale to a private association because OTBs' powers were limited to those necessary or convenient for carrying out corporate purposes); Op St Compt No. 82-64 (statutes governing OTBs and distribution of their earnings were intended to be comprehensive; absence of express authorization to create a reserve fund for capital projects left OTBs without authority to set up such funds).
We also note that corporations formed to conduct harness races are vested with "all the general powers of corporations created under the laws of this state." Racing Law § 302. They may use the portions of wagering proceeds retained by them to declare dividends or other profit distributions and may make investments not directly related to racing activities. Id., § 318(b)(i). They are entitled to retain profits for their own use and purposes. Id., § 318(b)(ii). Regional OTBs, by contrast, are public benefit corporations. They are not vested with all the general powers of corporations; their powers are circumscribed by the legislation creating them. OTBs are not authorized to retain profits. After payment of their costs, OTBs must divide their net revenue among participating counties according to a specific formula. Id., § 516(2).
Legislative history of section 304 of the Racing Law further underscores the conclusion that it was not intended to expand the limited powers of OTBs. The reference to "any corporation" formed pursuant to sections 222-705 was placed in section 304 when the law was consolidated in 1982 and was not meant to grant any new authority to OTBs.
Section 304 derives from provisions dating back at least to chapter 570 of the Laws of 1895. That statute authorized formation of corporations "for the purpose of raising and breeding and improving the breed of horses" and empowered "any [such] corporation formed under the provisions of this act" to hold trotting or running race meetings. L 1895, ch 570, § 3. Subsequent statutes provided for the creation of corporations to conduct races and preserved other provisions of law authorizing corporations to run races. See, e.g., L 1909, ch 40, §§ 280-82; L 1926, ch 440, §§ 1-3.
In 1940, the Pari-Mutuel Revenue Law was enacted. L 1940, ch 254. Article II of the Pari-Mutuel Revenue Law governed harness racing. Section 37 authorized formation of a corporation for the purpose of conducting harness race meetings with pari-mutuel wagering. Section 38 provided that any corporation formed under the provisions of "this act" (a reference to section 37), any corporation or association that had conducted harness racing in the previous two years, and any fair association "shall have the power and right" to conduct harness race meetings. Thus, the governing statute specifically authorized three classes of entities to conduct harness race meetings and excluded all others. 1954 Op Atty Gen 208. The same language granting authority to run races only to (1) corporations formed under "this act" (specifically for harness racing); (2) corporations grandfathered in; and (3) fair associations remained in the Pari-Mutuel Revenue Law when provisions creating six regional OTBs were added in 1973. L 1973, ch 346. Therefore, at that time there was no basis for a claim that OTBs could conduct harness racing and apply for licensure to conduct pari-mutuel wagering.
In 1982, the current Racing Law was enacted to consolidate existing statutory provisions governing racing. See, Memorandum of Assembly Sponsors Finneran, Sears and Hinchey, Bill Jacket, L 1982, ch 865. The provisions governing harness racing were placed in article III of the new law. Section 304, granting authority to conduct harness races to "any corporation formed under the provisions of sections two hundred twenty-two through seven hundred five of this chapter," was enacted. The 1982 consolidation was not intended to make any substantive change in the law governing racing. See, Remarks of Senate sponsor Senator Dunne, transcript of Senate Debate, July 1, 1982; July 14, 1982 Letter from Assembly sponsor Finneran to John G. McGoldrick, Bill Jacket L 1982, ch 865. Rather, the Legislature sought to continue existing authority of corporations in effecting the consolidation. Thus, the interpretation of section 304 urged by Western OTB would grant power to OTBs not intended by the Legislature in the 1982 statutory consolidation.
In light of this legislative history and the limited powers of OTBs, the reference to sections 222-705 in section 304 applies only to corporations within those sections that were previously specifically authorized to conduct harness racing. Sections 222-705 encompass all or part of eight separate articles of the Racing Law, which govern topics ranging from thoroughbred racing to equine research. We conclude that the reference to sections 222-705 was intended to ensure that corporations authorized to conduct harness racing under provisions of law consolidated into the Racing Law did not by implication lose that authority.[2]
You also have asked whether, if an OTB can hold harness races, it may be licensed to conduct pari-mutuel wagering under section 307 of the Racing Law. In light of our conclusion that an OTB may not hold harness races, we need not reach this question.
We conclude that an off-track betting corporation may not conduct a harness race meeting.
Very truly yours,
ELIOT SPITZER, Attorney General
[1] Sections 222-705 of the Racing Law also authorize creation of the following corporations: New York City OTB (§ 603); NYS Thoroughbred Breeding and Development Fund (§ 245); NYS Thoroughbred Racing Capital Investment Fund (§ 253); and NYS Horse Breeding Development Fund (§ 330). In addition, section 502 established five regional OTBs other than Western OTB. Among these corporations, only the NYS Thoroughbred Racing Capital Investment Fund has statutory authority to conduct races, but only in limited circumstances. Id., § 254(13)(a).
[2] References to sections 222-705 were substituted for references to "this act" or "this chapter" in many provisions of prior law when the Racing, Pari-Mutuel Wagering and Breeding Law was consolidated. Compare, for example, sections 406(1), 407(7), 408, 409(1)-(3), 410 and 415 with their predecessor statutes in L 1970, ch 1023 §§ 66(1), 67(7), 68, 69(1)-(3), 70 and 75, respectively.