## COUNTY BOARD OF ARLINGTON COUNTY, VIRGINIA, ET AL. *v.* RICHARDS ET AL.

No. 76–1418.   Decided October 11, 1977

PER CURIAM.

The motion of D. C. Federation of Civic Associations et al. for leave to file a brief as *amici curiae* and the petition for a writ of certiorari are granted.

To stem the flow of traffic from commercial and industrial districts into adjoining residential neighborhoods, Arlington County, Va., adopted zoning ordinance § 29D.   The ordinance directs the County Manager to determine those residential areas especially crowded with parked cars from outside the neighborhood.[1]   Free parking permits are then issued to residents of the designated areas for their own vehicles, to persons doing business with residents there, and to some visitors.   To

---

[1] This condition is met when "the average number of vehicles [operated by persons whose destination is a commercial or industrial district] is in excess of 25% of the number of parking spaces on such streets and the total number of spaces actually occupied by any vehicles exceeds 75% of the number of spaces on such streets on the weekdays of any month . . . ."

park an automobile without a permit in a restricted area between 8 a. m. and 5 p. m. on weekdays is a misdemeanor.

Acting under the ordinance, the County Manager designated a restricted area in Aurora Highlands, a residential neighborhood near a large commercial and office complex. Commuters who worked in this complex and had regularly parked in the area sued in the Circuit Court of Arlington County to enjoin the enforcement of the ordinance on state and federal constitutional grounds. The Virginia Supreme Court ultimately held that the ordinance violated the Equal Protection Clause of the Fourteenth Amendment.[2]

As stated in its preamble, the Arlington ordinance is intended

> "to reduce hazardous traffic conditions resulting from the use of streets within areas zoned for residential uses for the parking of vehicles by persons using districts zoned for commercial or industrial uses . . . ; to protect those districts from polluted air, excessive noise, and trash and refuse caused by the entry of such vehicles; to protect the residents of those districts from unreasonable burdens in gaining access to their residences; to preserve the character of those districts as residential districts; to promote efficiency in the maintenance of those streets in a clean and safe condition; to preserve the value of the property in those districts; and to preserve the safety of children and other pedestrians and traffic safety, and the peace, good order, comfort, convenience and welfare of the inhabitants of the County."

Conceding the legitimacy of these goals, the Virginia Supreme Court found that the ordinance's discrimination between residents and nonresidents "bears no reasonable relation to [the

---

[2] Although the state trial court found the ordinance invalid under the State and Federal Constitutions, the State Supreme Court rested its decision solely on the Equal Protection Clause of the Fourteenth Amendment.

regulation's] stated objectives," and, therefore, that "the ordinance on its face offends the equal protection guarantee of the 14th Amendment." 217 Va. 645, 651, 231 S. E. 2d 231, 235. We disagree.

To reduce air pollution and other environmental effects of automobile commuting, a community reasonably may restrict on-street parking available to commuters, thus encouraging reliance on car pools and mass transit. The same goal is served by assuring convenient parking to residents who leave their cars at home during the day. A community may also decide that restrictions on the flow of outside traffic into particular residential areas would enhance the quality of life there by reducing noise, traffic hazards, and litter. By definition, discrimination against nonresidents would inhere in such restrictions.[3]

The Constitution does not outlaw these social and environmental objectives, nor does it presume distinctions between residents and nonresidents of a local neighborhood to be invidious. The Equal Protection Clause requires only that the distinction drawn by an ordinance like Arlington's rationally promote the regulation's objectives. See *New Orleans* v. *Dukes,* 427 U. S. 297, 303 (1976); *Village of Belle Terre* v. *Boraas,* 416 U. S. 1, 8 (1974). On its face, the Arlington ordinance meets this test.

---

[3] Restrictions on nonresident parking have sparked considerable litigation. See, *e. g., South Terminial Corp.* v. *EPA,* 504 F. 2d 646, 671–676 (CA1 1974) (restrictions upheld); *Friends of the Earth* v. *EPA,* 499 F. 2d 1118, 1125 (CA2 1974) (restrictions upheld); *Commonwealth* v. *Petralia,* —— Mass. ——, 362 N. E. 2d 513 (1977) (restrictions upheld); *State* v. *Whisman,* 24 Ohio Misc. 59, 263 N. E. 2d 411 (Ct. Com. Pleas, 1970) (restrictions invalidated); *Georgetown Assn. of Businessmen* v. *District of Columbia,* Civ. No. 7242–76 (D. C. Super. Ct., Aug. 9, 1976) (restrictions preliminarily enjoined). The United States as *amicus curiae* notes that parking restrictions to discourage automobile commuting have been recommended by the Environmental Protection Agency to implement the Clean Air Amendments of 1970. See 38 Fed. Reg. 30629 (1973).

Accordingly, the judgment is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE MARSHALL would grant the petition for certiorari and set the case for oral argument.