163 Cal.App.3d 43 (1984)
210 Cal. Rptr. 186
THE PEOPLE, Plaintiff and Respondent,
v.
RACHEL HOUSMAN, Defendant and Appellant.
Docket No. 21583.
Court of Appeals of California, Appellate Department, Superior Court, Los Angeles.
November 27, 1984.
*44 COUNSEL
Rachel Housman, in pro. per., for Defendant and Appellant.
Charles D. Haughton, City Attorney, and Seth Weisbord, Deputy City Attorney, for Plaintiff and Respondent.
OPINION
REESE, P.J. 

I. STATEMENT OF THE CASE AND FACTUAL BACKGROUND
Defendant was cited for violation of Beverly Hills Municipal Code section 3-6.2205(a). That ordinance is part of a legislative scheme establishing preferential parking zones in designated sections of the City of Beverly Hills. The pertinent sections of the ordinance read:

*45 "Sec. 3-6.2202. Residential streets and alleys: Establishment of preferential parking zones.
"The Council may designate by resolution or ordinance certain residential streets or alleys, or any portions thereof, as preferential parking zones for residents adjacent thereto in which zones vehicles displaying a permit or other authorized indicia may be exempt from parking prohibitions or restrictions otherwise posted, marked, or noticed. Each preferential parking zone shall be designated only upon findings that such zone is required to enhance or protect the quality of life in the area of the proposed zone threatened by noise, traffic hazards, environmental pollution, or devaluation of real property resulting from commuter vehicular traffic, that such zone is necessary to provide reasonably available and convenient parking for the benefit of the adjacent residents, and that the proposed zone is desirable to encourage the use of car pooling and mass transit.
"No resolution or ordinance designating a preferential parking zone shall apply until signs or markings giving adequate notice thereof have been placed." (§ 1, Ord. 78-O-1679, eff. March 23, 1978, as amended by § 1, Ord. 80-O-1754, eff. February 7, 1980.) (Italics added.)

"Sec. 3-6.2203. Preferential parking zones: Criteria for determination of findings.
"The findings referred to in Section 3-6.2202 of this article shall be based upon the following criteria established to the satisfaction of the Council:
"(a) That commuter vehicles, defined as those vehicles operated by persons whose destinations are to nonresidential areas, do or may substantially and regularly interfere with the use of the majority of available public street or alley parking spaces by adjacent residents;
"(b) That the interference by the commuter vehicles referred to in subsection (a) of this section occurs at regular and significant daily or weekly intervals;
"(c) That the commuter vehicles being driven or parked in the area of the proposed zone cause or are the source of unreasonable noise, traffic hazards, environmental pollution, or devaluation of real property in the area of the proposed zone;
"(d) That the majority of the residents adjacent to the proposed zone desire, agree, or request preferential parking privileges. For petitions filed *46 with the Director of Transportation on and after July 5, 1983, that two-thirds (2/3) of the residents adjacent to the proposed zone desire, agree, or request preferential parking privileges;
"(e) That no unreasonable displacement of commuter vehicles will result into surrounding residential areas;
"(f) That a shortage of reasonably available and convenient residential related parking spaces exists in the area of the proposed zone; and
"(g) That no alternative solution is feasible or practical." (§ 1, Ord. 78-O-1679, eff. March 23, 1978, as amended by § 1, Ord. 83-O-1902, eff. August 18, 1983.) (Italics added.)

"Sec. 3-6.2204. Preferential parking privileges: Issuance of permits.
"(a) Issuing authority. The Director of Finance Administration shall issue permits for preferential parking. Applicants for such permits may be required to present such proof, as may be required by the Director of Finance Administration, of residence adjacent to the area designated as a preferential parking zone. Not more than three (3) permits shall be issued for each qualified dwelling unit to any qualified applicant. Applicants requesting more than three (3) permits for any dwelling unit may be granted additional permits by the Traffic and Parking Commission upon a showing that there are more than three (3) vehicles registered at the address of such dwelling unit, and that insufficient off-street parking is available to the applicant during the effective hours of the preferential parking zone.
"(b) Fees. The Director of Finance Administration shall collect a fee of Three and no/100ths ($3.00) Dollars for each permit issued pursuant to this section.
"(c) Duration of permits. Permits issued pursuant to this section shall remain effective for a period of one fiscal year, or fraction thereof, or as long as the applicant continues to reside in a qualified dwelling unit for such permit, or until the preferential parking zone for which such permit was issued is eliminated, whichever period of time is less.
"(d) Conditions of permits. Each permit issued pursuant to this section shall be subject to all the conditions and restrictions set forth in this article and of the preferential parking zone for which it was issued, including conditions or restrictions which may be altered or amended from time to time. The issuance of such permit shall not be construed to be a permit for, *47 or approval of, any violation of any provisions of this Code or any other law or regulation." (§ 1, Ord. 78-O-1679, eff. March 23, 1978, as amended by § 1, Ord. 79-O-1722, eff. February 15, 1979.)

"Sec. 3-6.2205. Prohibitions.
"(a) No vehicle shall be parked or stopped adjacent to any curb in a preferential parking zone in violation of any posted or noticed prohibition or restriction, unless such vehicle shall have prominently displayed on or by the left lower corner of the rear window thereof a permit indicating an exemption from such restriction or prohibition.
"(b) It shall be unlawful for any person to sell, rent, or lease, or cause to be sold, rented, or leased, for any value or consideration any preferential parking permit. Upon the conviction of a violation of this subsection, all preferential permits issued to, or for the benefit of, the dwelling unit for which the sold, rented, or leased permit was authorized shall be void.
"(c) It shall be unlawful for any person to buy or otherwise acquire for value or use any preferential parking permit, except as provided for in this article." (§ 2, Ord. 78-O-1679, eff. March 23, 1978.)

"Sec. 3-6.2206. Preferential parking zones: Locations and restrictions.
"(§ 1, Ord. 78-O-1679, eff. March 23, 1978, as amended by § 3, Ord. 78-O-1708, eff. October 19, 1978, § 3, Ord. 79-O-1725, eff. February 20, 1979, § 3. Ord. 79-O-1732, eff. April 3, 1979, and §§ 3 and 4, Ord. 79-O-1742, eff. September 13, 1979; removed from Municipal Code by § 3, Ord. 80-O-1754, eff. February 7, 1980)
"(a) Zone `A'. No parking during the hours between 7:00 p.m. and 9:00 p.m. on any Monday through Friday and between 9:00 a.m. and 9:00 p.m. on any Saturday and Sunday, except by permit in the following locations:
"(1) On both sides of Almont Drive between Wilshire Boulevard and Clifton Way;
"(2) On both sides of LaPeer Drive between Wilshire Boulevard and Clifton Way; and
"(3) On both sides of Clifton Way between LaPeer Drive and Wetherly Drive;
*48 "(b) Zone `B'. No parking at any time, except by permit, in the following locations:
"(1) On both sides of Trenton Drive between Wilshire Boulevard and Elevado Avenue; and
"(2) On both sides of Carmelita Avenue between Wilshire Boulevard and Walden Drive;
"(c) Zone `C'. No parking during the hours between 8:00 a.m. and 6:00 p.m. on any Monday through Saturday, except by permit, in the following locations:
"(1) On both sides of El Camino Drive between Gregory Way and the east-west alley immediately north of Olympic Boulevard;
"(2) On both sides of Camden Drive between Charleville Boulevard and Gregory Way;
"(3) On both sides of Peck Drive between Charleville Boulevard and Gregory Way;
"(4) On both sides of Rodeo Drive between Charleville Boulevard and the east-west alley immediately north of Olympic Boulevard;
"(5) On both sides of Bedford Drive between Charleville Boulevard and the east-west alley immediately north of Olympic Boulevard;
"(6) On both sides of Roxbury Drive between Charleville Boulevard and the east-west alley immediately north of Olympic Boulevard;
"(7) On both sides of McCarty Drive between Charleville Boulevard and the east-west alley immediately north of Olympic Boulevard;
"(8) On both sides of Linden Drive between Charleville Boulevard and the east-west alley immediately north of Olympic Boulevard;
"(9) On the south side of Charleville Boulevard between Linden Drive and El Camino Drive; and
"(10) On both sides of Gregory Way between Linden Drive and El Camino Drive;
*49 "(d) Zone `D'. No parking at any time on any Monday through Saturday, except by permit, on both sides of El Camino Drive between Charleville Boulevard and Gregory Way; and
"(e) Zone `E'. No parking during the hours between 8:00 a.m. and 6:00 p.m. on any Monday through Saturday, except by permit, in the following locations:
"(1) On both sides of Crescent Drive between Olympic Boulevard and Whitworth Drive; and
"(2) On the north side of Whitworth Drive between Elm Drive and Beverly Drive." (§ 1, Ord. 78-O-1679, eff. March 23, 1978, as amended by § 3, Ord. 78-O-1708, eff. October 19, 1978, § 3, Ord. 79-O-1725, eff. February 20, 1979, and § 3, Ord. 79-O-1732, eff. April 3, 1979.) (Italics added.)

II. ISSUES
After a plea of guilty, defendant challenges by a clerk's transcript appeal the constitutionality of section 3-6.2205 of the Beverly Hills Municipal Code on the following grounds:
1. The ordinance impinges upon a fundamental right of travel that is subject to the strict scrutiny test under either Amendment XIV of the federal Constitution or article I, section 7 of the California Constitution; and
2. The ordinance violates the privileges and immunities clause of the United States Constitution (art. IV, § 2) and the California Constitution (art. I, § 7, subd. (b)).

III. DISCUSSION

A. Equal Protection Clause  Strict Scrutiny Test

(1a) Defendant contends that the ordinance under discussion must be judged by the strict equal protection test, i.e., must be shown to be necessary to promote a compelling governmental interest. Defendant posits the ordinance impinges on her "right to travel," a fundamental right. We disagree. Defendant equates the denial of the right to park on certain designated streets in Beverly Hills with denial of the right to travel from city to city, or state to state. Such reasoning is analogous to the faulty reasoning adopted by appellant in Ector v. City of Torrance (1973) 10 Cal.3d 129 [109 Cal. Rptr. 849, 514 P.2d 433], wherein the court states at page 135: *50 "First it is said that the residence requirement impinges on appellant's `right to travel.' The contention is not persuasive. Viewed realistically, appellant is claiming the right to `travel' between his home and his place of employment each morning and evening of each working day  in other words, a `right to commute." We cannot discern such a right in the United States Supreme Court decisions relied on by appellant. Clearly the cultural and educational rewards of international travel (Kent v. Dulles (1958) 357 U.S. 116, 126-127 [2 L.Ed.2d 1204, 1210-1211, 78 S.Ct. 1113]) are not reaped from routine daily trips of a harassed metropolitan commuter. Nor have such trips any relevance whatever to the right to migrate among the several states for the purpose of starting a new life without fear of being denied welfare if a job is not immediately available (Shapiro v. Thompson (1969) 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322]), or to the right to move within the confines of a state for the same purpose without fear of being denied prompt access to public housing facilities (King v. New Rochelle Municipal Housing Authority (2d Cir.1971) 442 F.2d 646; Cole v. Housing Authority of City of Newport (1st Cir.1970) 435 F.2d 807)." (Italics added.)
In the sole authority which we have ascertained to be directly in point to the legal and factual issues before us, Arlington County Board v. Richards (1977) 434 U.S. 5 [54 L.Ed.2d 4, 98 S.Ct. 24], a case involving the constitutionality of a preferential parking ordinance with similar stated purposes as the one before us, the United States Supreme Court at page 7 [54 L.Ed.2d at page 7] states:
"To reduce air pollution and other environmental effects of automobile commuting, a community reasonably may restrict on-street parking available to commuters, thus encouraging reliance on car pools and mass transit. The same goal is served by assuring convenient parking to residents who leave their cars at home during the day. A community may also decide that restrictions on the flow of outside traffic into particular residential areas would enhance the quality of life there by reducing noise, traffic hazards, and litter. By definition, discrimination against nonresidents would inhere in such restrictions.[3] [¶] The Constitution does not outlaw these social and environmental objectives, nor does it presume distinctions between residents and nonresidents of a local neighborhood to be invidious. The Equal Protection Clause requires only that the distinction drawn by an ordinance like Arlington's rationally promote the regulation's objectives. See New Orleans v. Dukes, 427 U.S. 297, 303 (1976); Village of Belle Terre v. Boraas, 416 U.S. 1, 8 (1974). On its face, the Arlington ordinance meets this test." (Italics added.)
The court's footnote 3 provides: "[3]Restrictions on nonresident parking have sparked considerable litigation. See, e.g., South Terminial Corp. v. *51 EPA, 504 F.2d 646, 671-676 (CA1 1974) (restrictions upheld); Friends of the Earth v. EPA, 499 F.2d 1118, 1125 (CA2 1974) (restrictions upheld); Commonwealth v. Petralia, 372 Mass. 452, 362 N.E.2d 513 (1977) (restrictions upheld); State v. Whisman, 24 Ohio Misc. 59, 263 N.E.2d 411 (Ct. Com. Pleas, 1970) (restrictions invalidated); Georgetown Assn. of Businessmen v. District of Columbia, Civ. No. 7242-76 (D.C. Super. Ct., Aug. 9, 1976) (restrictions preliminarily enjoined). The United States as amicus curiae notes that parking restrictions to discourage automobile commuting have been recommended by the Environmental Protection Agency to implement the Clean Air Amendments of 1970. See 38 Fed. Reg. 30629 (1973)."
Defendant attempts to circumvent the clear and definite holding in Arlington County Board v. Richards, supra, 34 by arguing that the right to park amounts to a fundamental right. She cites no authority for this position. In support of her allegation equating "travel" rights with "parking" privileges, defendant cites several cases which involve serious burdens upon the right to travel, and not inconsequential burdens. None of these cases involves parking. "The test is not whether the penalty imposed on the right to travel is the denial of a fundamental right, such as access to basic necessities or the right to vote. Instead, the test is whether the penalty is significant and consequential, rather than merely inconsequential as was the case in Adams, supra, 12 Cal.3d 55 [115 Cal. Rptr. 247, 524 P.2d 375]." (Bay Area Women's Coalition v. City and County of San Francisco (1978) 78 Cal. App.3d 961, 969 [144 Cal. Rptr. 591].) In Bay Area, cited by defendant, the court was considering the constitutionality of a five-year durational residency requirement for holding public office. The court held that under the "`strict scrutiny test' the City must establish that the durational residency requirements are reasonably necessary to promote a compelling governmental interest. Measured by this test these requirements cannot be upheld, and the City concedes this in its brief." (P. 970.)
Defendant further cites People v. Beach (1983) 147 Cal. App.3d 612 [195 Cal. Rptr. 381] in support of her position that the ordinance before us impinges upon the "right to travel." However, Beach involved an onerous condition of probation which required the defendant to relocate herself from the community where she had lived in her own home for 24 years.
In re White (1979) 97 Cal. App.3d 141 [158 Cal. Rptr. 562], cited by defendant, involved a harsh and oppressive condition of probation pursuant to which defendant, convicted of prostitution, was provided with a map and was prohibited from being in a specified area of Fresno, at any time of the day or night.
*52 In further support of the proposition that the use of public streets involves the fundamental constitutional right to travel, defendant cites the following language from Escobedo v. State of California (1950) 35 Cal.2d 870, 875-876 [222 P.2d 1]: "`The streets of a city belong to the people of the state, and the use thereof is an inalienable right of every citizen....' `The use of highways for purposes of travel and transportation is not a mere privilege, but a common and fundamental right, of which the public and individuals cannot rightfully be deprived....'"
In Hernandez v. Department of Motor Vehicles (1981) 30 Cal.3d 70 [177 Cal. Rptr. 566, 634 P.2d 917], the court rejected the contention that the right to drive is a fundamental constitutional right. At pages 78-79, the Hernandez court states: "Past California cases, however, provide no support whatsoever for plaintiff's contention. Over 30 years ago, in Escobedo v. State of California (1950) 35 Cal.2d 870 [222 P.2d 1] (overruled on other grounds in Rios v. Cozens (1972) 7 Cal.3d 792 [103 Cal. Rptr. 299, 499 P.2d 979]), our court  while acknowledging the great importance of driving  at the same time explicitly emphasized that `it is ... well established ... that usage of the highways is subject to reasonable regulation for the public good.... "The use of the public highways by motor vehicles, with its constant dangers, renders the reasonableness and necessity of regulation apparent...."'"
We conclude that the right to use city streets for the purpose of travel or parking is not in that category of fundamental rights subject to the strict scrutiny test under either Amendment XIV of the federal Constitution or article I, section 7 of the California Constitution. Upon the limited record before us, we find that Beverly Hills Municipal Code section 3-6.2205(a) on its face is not violative of either Amendment XIV of the federal Constitution or article I, section 7 of the California Constitution.

B. Privileges and Immunities Clause

Defendant next contends that Beverly Hills Municipal Code section 36.2205(a) violates the privileges and immunities clause of the United States Constitution (art. IV, § 2) and the California Constitution (art. I, § 7, subd. (b)). Again, we disagree.
(2) The California and United States privileges and immunities clauses call for the same analysis as called for by the equal protection provisions: "Article I, section 7, subdivision (b), provides: `A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens....' The cases decided under former article I, section 21, of the California Constitution regarding privileges and immunities establish *53 that the classifications under that section, like the equal protection clause and the prohibitions against special legislation, are valid unless the classification is unreasonable or arbitrary." (Citation omitted, italics added.) (Durham v. City of Los Angeles (1979) 91 Cal. App.3d 567, 574 [154 Cal. Rptr. 243].)
(1b) Our determination herein that the ordinance before us differentiates between residents and nonresidents on a reasonable and rational basis and that a fundamental right is not involved eliminates lengthy discussion of defendant's contention regarding a privileges and immunities clause violation. Further, the limited record before us does not reflect defendant to be an out-of-state resident and, thus, she has no standing to claim the benefit of the clause under either the California or federal Constitutions.
The judgment is affirmed.
Cooperman, J., concurred.