Jacqueline M. ZAROOGIAN, Charles W. Hahn, and Sandra J. Scoliard, Individually and on Behalf of All Others Similarly Situated

v.

TOWN OF NARRAGANSETT; Vincent T. Izzo, In His Official Capacity As Acting Town Manager For the Town of Narragansett; Joan Bartolomeo, In Her Official Capacity As President Of The Narragansett Town Council; Thomas P. Cronin, Kathleen Fagan, Anne E.N. Hoxsie, and Maurice J. Loonthens, Jr., In Their Official Capacities As Members of the Narragansett Town Council; Ralph Coppa, In His Official Capacity As Director of the Department of Parks And Recreation For The Town of Narragansett; and Karen L. Schick, In Her Capacity As Beach Manager For the Department Of Parks And Recreation For The Town Of Narragansett.

C.A. No. 88–0178–B.

United States District Court, D. Rhode Island.

Dec. 5, 1988.

---

Judith Colenback Savage, Edwards & Angell, Providence, R.I., for plaintiffs.

Edward W. Moses, Susan Antonio Pacheco, Asquith, Merolla, Anderson, Ryan & Wiley, Providence, R.I., John V. Kenny, Wakefield, R.I., for defendants.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

The Plaintiffs in this action seek to have declared as violating the Equal Protection Clause of the United States Constitution an ordinance of the Town of Narragansett which seeks to provide exclusive use of some of its beach facilities to residents of the town only. This is the sole issue in this action.

The Town of Narragansett is located on the westerly shore of Narragansett Bay and nature has blessed the community with a substantial sandy beach front. When the great hurricane of 1938 destroyed the privately owned buildings on the beach, the Town sought and obtained authorization from the State of Rhode Island to carry on a general beach and bathhouse business, to acquire land for beach purposes through a bond issue and to construct and maintain buildings and accommodations for bathers, to charge fees for the use of such facilities and to make reasonable rules and regulations for the use of the facilities. This legislation took form in Chapter 764 of the Public Laws of Rhode Island 1939. As authorized, the Town acquired a natural sand beach located in approximately the center of the Town, 437,300 square feet in area at the present time, combining private beaches which had been known by such names as "Palmers" "Sherry's" and the "Clambake Club."

With funds obtained by the bonds authorized by the State of Rhode Island, the Town constructed two bathhouses, one known as the "Town Pavilion" and another known as the "Canonchet Pavilion" and moved a house onto the property near the present Canonchet Pavilion to serve as a clubhouse. As a result of another hurricane in 1954 these buildings were destroyed. Following the 1954 hurricane the Town built eleven free-standing beach facilities structures and four separate paved parking lots on the property. There are in effect two separate municipal beach operations, one known as the Narragansett Beach and the other known as the Canonchet Beach maintained by the Town. The beach area is itself available for use by anyone willing to pay a uniform entrance fee whether they are residents or non-residents of the Town.

There is one building and three parking lots which are associated with the Town Pavilion. This building contains 297 rental lockers that have changing rooms with or without showers, a lifeguard office, a concession stand, storage areas and offices for the beach management. Historically the lockers at the Town Pavilion had been leased both to non-residents and to persons who either reside in or pay taxes to the Town of Narragansett. Lessees of the Town Pavilion facilities are also provided a parking space in the Town lot reserved for that purpose.

The Canonchet Beach facility consists of eleven buildings, one called the Canonchet Pavilion, one called the Canonchet Clubhouse and nine buildings which comprise the cabanas. This area has available two parking lots. The pavilion has 256 changing rooms, suites and shower rooms. It also has a concession area and beach chair and umbrella storage areas. The nine buildings which comprise the cabanas house a total of 72 cabana units, each of which contains a shower, a dressing room and shares a joint storage area and deck with an adjoining unit. There were a total of 328 cabana units, suites, shower rooms and changing rooms in the Canonchet Pavilion. The Canonchet Clubhouse, another building, houses a meeting room, which is leased to the public on occasion, storage areas, kitchen areas, available for use by the public, rest room facilities, and a porch and a deck area which are also available for use by the public. Other than the changing rooms, shower rooms and cabana units, all of the Canonchet Beach land and buildings have been open to use by the general public and no distinction is made between residents and non-residents of the Town.

In all, the Town Beach and Canonchet Beach had 625 individual beach facilities available through the 1987 season. From 1954 until approximately 1978, the Town leased these individual beach facilities at both the Town Beach and the Canonchet Beach to residents and non-residents on a first-come, first-serve basis. It was the practice of the Town to first notify those who had leased facilities the previous year that they had the first opportunity to renew. This practice changed in 1981. A waiting list has been maintained since 1981, on which the Town has separately listed residents and non-residents. No non-resident has been offered a facility from the waiting list since this distinction has been made.

The Town Building Inspector condemned the Town Pavilion for the 1988 summer season because of an asbestos inspection, with the result that it became necessary to make some provision for the lessees of the 297 rental lockers at the Town Pavilion. The Town's solution to this problem was to adopt a policy of giving residents of the Town who had leased facilities at Canonchet and the Town Pavilion, 176 at Canonchet and 112 at Town Pavilion, the first opportunity to enter into leases for the Canonchet facilities for the year 1988 and giving other residents of the Town the first opportunity to lease any then remaining available facilities. Not only did this action prompt dismay from persons who for many years, although non-residents, had maintained cabanas at Canonchet Beach, it prompted this litigation.

Although the Plaintiffs initially raised a number of issues, it is now stipulated that there is but one issue and that is, whether or not the action of the Town in denying to nonresidents the opportunity to lease facilities at Canonchet Beach has violated the Equal Protection Clause of the United States Constitution. The Plaintiffs argue that because a State law authorizes the funding and maintenance of a beach facility for the benefit of the public, the denial of the opportunity to use the facilities by non-residents by the Town's action constitutes a violation of the Equal Protection rights of the public and the parties and requires a determination that the Town's policy is unconstitutional and therefore invalid.

■ The State law at issue is Chapter 764, the 1939 Enabling Act which authorized the Town of Narragansett to

carry on a general beach and bathhouse business at said town, to purchase ...

305

lands within said town, and purchase, construct, maintain and operate or lease thereon buildings, piers, walks, parking facilities and swimming pools; to furnish bathing accommodations and facilities <u>to the public;</u> and to make reasonable rules and regulations for the use of the same, and charge reasonable fees therefore. (underscoring added).

1939 R.I.Pub.Laws, ch. 764, Sec. 1. In the absence of ambiguity, the language of a statute must be given its plain meaning. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. ——, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) (reviewing court must determine that challenged regulation is consistent with enabling statute). "If the statute is clear and unambiguous 'that is the end of the matter....'" *Id.* While the word "public" can be defined as "the community at large, without reference to geographical limits," it can also refer to "the inhabitants of a particular place" or "the people of the neighborhood."[1] To the extent that the statute's use of the word "public" can be regarded as ambiguous, this Court finds that the Town of Narragansett is authorized by virtue of its delegated authority to regulate the use to include or exclude nonresidents from its definition as circumstances require. The Act specifies only that the "bathing accommodations and facilities" be furnished to the public, not the leased bathhouse facilities. The bathing facilities—beach and some parking areas, rest rooms, etc.—are and always have been available to the public.[2]

██ Plaintiffs contend that the legislative intent of the 1939 General Assembly can be ascertained, not by reading the plain language of the statute, but by reading the contents of a letter submitted as a part of the effort to obtain passage of the Enabling Act. This letter, from the Town Council of Narragansett to the General Assembly, urges passage of the Enabling Act "so that the Town ... may be ready to receive the people of the State of Rhode Island and other States during the summer of 1939...." Plaintiffs view this wording as requiring that each of the facilities at Narragansett be made available to all Rhode Island and, indeed, all the world. The Court disagrees. The beach and other areas of the facilities are open to the world. However, use of the leased facilities—lockers, shower and changing rooms, and cabanas—by virtue of their finite number must be restricted. It can hardly be argued otherwise that the use of these facilities demands privacy.

That the Town policy restricts the use so as to give priority to residents does not contravene the Enabling Act. The Act itself purports to protect the rights of town residents:

> [N]o rights of the inhabitants of said town ... shall be destroyed or substantially impaired by this act ... though the exercise of any rights may be regulated or reasonably restricted under this act so as to secure the most equitable enjoyment of such rights by said inhabitants....

1939 R.I.Pub.Laws, ch. 764, Sec. 9. The resident priority policy of the Town acts to secure an equitable enjoyment of the individual beach facilities for the Town's inhabitants. A plain reading of the statute, coupled with the facts, compel the conclusion that the state did not intend that all the

---

1. *See People v. Powell,* 274 N.W. 372, 373, 280 Mich. 699 (1937) ("In one sense, the 'public' is everybody; ... the community at large.... In another sense the word does not mean all the people nor most of the people, nor very many of the people.... [I]t has been defined ... as meaning the inhabitants of a particular place; ... the people of the neighborhood."). *See also Barkin v. Bd. of Optometry,* 75 Cal.Rptr. 337, 346, 269 C.A.2d 714 (1969) ("public" defined as "particular body or section of the people"); *City of College Park v. Cotter,* 525 A.2d 1059, 1066–67 (1987) ("general public" construed consistently with "citizens of the city").

2. Plaintiffs also argue that the General Laws of Rhode Island, §. 45–35–3, require free access to the beach facilities. That law prohibits a city or town from "deny[ing] or restrict[ing] to the people free access to ... any ... land held by or for the city or town for recreation purposes." R.I. Gen.Laws § 45–35–3 (1980). Again, there is no question that the beach itself is open to the public; the Town policy does nothing to deny the public access to it. This argument will not be addressed further.

facilities of the beach and bathhouse business in Narragansett must be open to all the public under all circumstances.

 Where a classification is not inherently suspect and does not involve a fundamental right, the proper test to use in determining whether it violates the equal protection clause is the rational basis test. *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Social or economic legislation enacted by states is especially given "wide latitude" in relation to the equal protection clause. *Id. Accord Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982) (classification must bear "fair relationship to a legitimate public purpose"); *Bankers Life & Casualty Co. v. Crenshaw,* 486 U.S. ——, 108 S.Ct. 1645, 1653, 100 L.Ed.2d 62 (1988) (legislation need only be "rationally related to ... legitimate interests"). The Supreme Court upheld Montana's increased elk-hunting license fees for non-residents of the state, determining that "a chance to engage temporarily in a recreational activity" is "not fundamental." *Baldwin v. Fish & Game Comm'n of Montana,* 436 U.S. 371, 377, 98 S.Ct. 1852, 1857, 56 L.Ed.2d 354 (1978). By its very nature, use of beach facilities is a recreational activity and therefore not entitled to heightened scrutiny. In examining a resident-only parking ordinance, the Court found "distinctions between residents and non-residents of a local neighborhood [not] to be invidious," so long as they "rationally promote the regulation's objectives." *County Bd. of Arlington County, Va. v. Richards,* 434 U.S. 5, 7, 98 S.Ct. 24, 26, 54 L.Ed.2d 4 (1977). So here, the distinction between residents and non-residents rationally promotes the Town's legitimate objectives.

■ The Enabling Act authorizes the Town to operate beach and bathhouse facilities for the benefit of the public. The Town does this. The beach itself is open to the public without limitation or exclusion. Further, the meeting room, concession areas, rest rooms, kitchen areas and porch and deck areas are available to the public. Only the changing rooms, shower rooms, and cabana units are restricted primarily to residents. The condemnation of the Town Pavilion decreased the number of these individual facilities from 625 to 358 for the 1988 season. The resident priority policy is a "reasonable rule and regulation," as allowed by the Enabling Act, of the use of the facilities which rationally furthers the aim of the Town to allocate the limited number of rental facilities in the conduct of its beach and bathhouse business. The rationing of this scarce resource is based on a rational premise. The very nature of the use requires exclusion. As such, the limitation does not violate Plaintiffs' constitutional guarantees to equal protection of the laws.

Therefore, Judgment will be entered for Defendants for costs.