**1580**

LANGLEY LAND COMPANY, Plaintiff,

v.

MONROE COUNTY, GEORGIA, et al., Defendants.

Civ. No. 90–75–3–MAC(DF).

United States District Court,
M.D. Georgia,
Macon Division.

June 12, 1990.

Robert C. Norman, Jr., Charles L. Ruffin, Jones, Cork & Miller, Macon, Ga., Charles H. Tisdale, Jr., King & Spalding, Atlanta, Ga., for plaintiff.

James A. Vaughn, Mills, Freeman, Vaughn & Sosebee, Charles B. Haygood, Jr., Forsyth, Ga., Spencer C. Weiss, Frederick L. Wright, II, Smith, Currie & Hancock, Atlanta, Ga., for defendants.

FITZPATRICK, District Judge.

On June 6, 1990, this court entered an order granting defendants' motion to dismiss. 738 F.Supp. 1571. Plaintiff filed a motion pursuant to Federal Rules of Civil Procedure 59(e)[1] for reconsideration and amendment of dismissal order, and for a stay. Plaintiff first seeks the opportunity to amend its complaint to assert an equal protection claim. Plaintiff also asks the court to amend its June 6, 1990 order to deny defendants' motion to dismiss as to Langley's targeting substantive due process claim and public use claim. Lastly, plaintiff prays that the court enter a stay of its dismissal order, in effect enjoining any condemnation proceedings. The court heard oral argument on June 12, 1990, and after careful consideration, is prepared to issue a ruling on plaintiff's motion for reconsideration.

## I. MOTION TO AMEND THE COMPLAINT

Plaintiff seeks to amend its complaint to add an equal protection claim alleging that Langley's discrimination on the basis of nonresidence is an equal protection claim. Brief in Support of Motion Pursuant to Rule 59(e) for Reconsideration of Order Dismissal and for a Stay, p. 10 (hereinafter known as Plaintiff's Reconsideration Brief). Plaintiff argues that the alleged facts that are the basis for its targeting substantive due process claim also give rise to its equal protection claim. The court had granted defendants' motion to dismiss plaintiff's targeting substantive due process claim under Federal Rules of Civil Procedure

---

1. Federal Rules of Civil Procedure 59(e) provides that "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Langley served its motion on June 7, 1990, well within the time limits.

12(b)(6). "[W]hen a plaintiff seeks to amend after a judgment of dismissal has been entered by asking the district court to vacate its order of dismissal pursuant to Fed.R.Civ.P. 59(e)," leave to amend " 'shall be freely given when justice so requires.' " *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir.1988) (quoting *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597 (Former 5th Cir.1981)). At oral argument, the court GRANTED plaintiff leave to amend its complaint to add the equal protection claim and heard argument on this claim. The court will consider defendants' motion to dismiss Langley's equal protection claim pursuant to Federal Rules of Civil Procedure 12(b)(6) in this order.

## II. MOTION TO RECONSIDER

### A. Langley's Public Use Claim—

Langley argues that the court erred in dismissing its public use claim pursuant to Federal Rules of Civil Procedure 12(b)(1). In its June 6th order, the court held that Langley's public use claim was not ripe for adjudication and did not reach the merits of the claim. The court does not believe the plaintiff has raised any new issues regarding the public use claim, rather plaintiff's motion is based on the contention that there are fallacies in the court's reasoning. Langley's complaint alleged that "there is no assurance or reasonable probability that defendants can achieve the purported public purpose which they intend for plaintiff's property." Plaintiff's Complaint, ¶¶ 34 & 41; *see also* Plaintiff's Complaint, ¶ 29; Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, pp. 20, 22. In its motion to reconsider, Langley argues that the County will never obtain the necessary permits, that the impossibility requirement has been met. Simultaneously Langley seeks to reverse the burden of proof—Langley argues that Monroe County, the condemnor, should have to es-

tablish that there is a reasonable probability that it can obtain the permits before being allowed to proceed with the condemnation. Plaintiff's Reconsideration Brief, pp. 14–15.

The court disagrees. This is not the system provided for by Georgia or federal law. The court is concerned with possible federalism problems and is hesitant to become involved in matters concerning the state alone. The court is aware that the Georgia condemnation procedure provides landowners the opportunity to present claims regarding the probability of land being used for the public purpose.[2] The facts will be developed and the issues more clearly defined during and after these eminent domain proceedings have occurred. Plaintiff's argument substantiates the court's holding that the claim is not ripe for decision. The issues involving the taking of Langley's land are merely speculative and conjectural at this time.

Plaintiff also contends that if Monroe County takes title to the land but the site cannot be operated as a landfill, Langley will be left without any remedy. Plaintiff is incorrect in its assumption that the doors of this court would be closed to Langley. At that time the issue would be fully developed and clearly defined and would be ripe for federal adjudication. The plaintiff does not offer any new arguments, but disagrees with the bases of the court's conclusion. Accordingly, the court DENIES plaintiff's motion for reconsideration of its public use claim.

### B. Langley's Targeting Substantive Due Process/Equal Protection Claim

The court held that Langley was unable to pass the Eleventh Circuit's two-part test, which determines whether there has been a violation of substantive due process, with respect to its targeting substantive due process claim. This court

---

**2.** O.C.G.A. § 22–2–112 also provides for an appeal of the special master's award generally; and nonvalue issues may be appealed. " '[A]ll issues may be raised in an appeal from the [special master's] award....' " *Walker v. Georgia Power Co.*, 177 Ga.App. 493, 339 S.E.2d 728,

731 (1986) (quoting *DeKalb County v. Jackson-Atlantic Co.*, 123 Ga.App. 695, 698, 182 S.E.2d 160, 162 (1971)). *See Metropolitan Atlanta Rapid Transit Authority v. Central Parking System of Georgia, Inc.*, 167 Ga.App. 649, 307 S.E.2d 93, 96 (1983).

thus dismissed that claim for failure to state a claim upon which relief can be granted. Plaintiff's arguments fail to persuade this court that its findings were incorrect.[3] The court remains convinced that a claim of discrimination on the basis of nonresidence does not state a claim of denial of substantive due process which rises to a constitutional violation in this case.

Plaintiff has also raised an equal protection claim. Langley contends that Monroe County has violated the Fourteenth Amendment by discriminating against nonresidents in targeting nonresidents' land for condemnation. Langley's complaint, as amended, alleges discrimination against "nonresident landowners"; nonresident landowners would constitute the allegedly impermissible class.[4] "Absent a suspect classification or the infringement of a fundamental right, neither of which is present here, the equal protection clause is offended only if the [Board of Commissioners'] different treatment of [Langley] bears no rational relationship to a legitimate governmental purpose." *Parks v. Watson,* 716 F.2d 646, 654 (9th Cir.1983).[5]

It is uncontested that the condemnation of land for the operation of a landfill is a legitimate public purpose (the ends of the legislation are appropriate). Plaintiff asserts, however, that the decision is not rationally related to that purpose (the means to that end is illegitimate). The applicable standard of review "requires only that the [Board's decision] be shown to bear some rational relationship to legitimate state purposes." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 40, 93

S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973). The Strickland Loop Road site (Langley's land chosen to be condemned) need not be the best site, or even the second or third best site, there need only have been a rational relationship between the decision and the objective.

In *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), the Supreme Court overruled the only decision between the late 1930s and the 1970s in which the Court had struck down an economic regulation on equal protection grounds. The Court noted that economic regulations are subject to a deferential standard of review; and that "rational distinctions may be made with substantially less than mathematical exactitude." *Id.* at 303, 96 S.Ct. at 2517. The Court added that "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Id.* Plaintiff is asking the court sit as a superlegislature and "to intrude into an area in which it has traditionally deferred to state legislatures." *Rodriguez,* 411 at 40, 93 S.Ct. at 1300.

Plaintiff requests the court to create a new class to be protected against a governmental entity's decisions regarding the exercise of the entity's power of eminent domain. "It is not the province of this Court to create substantive constitutional rights in the name of guaranteeing equal protection of the laws." *Rodriguez,* 411 U.S. at 33, 93 S.Ct. at 1296. In this case, Monroe County, "the sovereign," has a con-

3. Instead, at oral argument the court became increasingly concerned that the Commissioners' selection of Langley's land may not be a decision that is definite and final with respect to the property at issue. *See also* June 6, 1990 order, p. 16 n. 16.

4. Plaintiff does not allege that this is a suspect classification. Historically, the core classification of the equal protection clause of the Fourteenth Amendment has been race; racial classifications are subject to strict scrutiny. Gender is a quasi-suspect classification triggering an intermediate level of review. Other classifications that have sometimes triggered heightened scrutiny are alienage and illegitimacy. These

classifications share the quality of "disadvantaging" the classified group in some manner analogous to disadvantaging racial classifications. Plaintiff has not alleged any disadvantages accruing to its class beyond the fact that Monroe County selected Langley's land for condemnation.

Defendants contest the allegation that the defendants made any classification at all, arguing that this is one decision and not a systemic practice or policy.

5. Plaintiff acknowledges that the court should analyze this claim under the traditional (rational basis) standard. Plaintiff's Reconsideration Brief, p. 7.

stitutional right to exercise its power of eminent domain. The fifth amendment provides two specific limitations on this power: the land taken by the sovereign must be for a public use, and the condemnee is entitled to just compensation. There is no absolute constitutional right not to have one's property condemned. The classification of "residents" as opposed to nonresidents, if any, in an eminent domain proceeding [6] is presumed valid.

As defendants stated at oral argument, if the site receives the necessary permits, and is operated as a landfill, it seems that the operation itself would constitute evidence that the Board's decision to condemn that land had a rational relationship to the objective: a public landfill. Plaintiff contends that the site cannot receive the necessary state and federal permits to operate as a landfill and thus the decision to condemn its land was pretextual and could have no rational relationship to a legitimate state purpose. The court has already addressed this claim and believes this is too hypothetical to form the basis of plaintiff's claim that there could be NO rational relationship between the decision and the purpose. If the Board reasoned that the site would have been less likely to have been opposed, saving the County money, then the classification may be reasonably related to legitimate goals.

In this case, plaintiff has not yet proven that the Commissioners treated Langley differently, but is asking that the state condemnation proceeding be stayed while Langley has the opportunity to do so. Plaintiff argues that if nonresidency was the primary motivation of the site selection process, then the selection would be invalid. The court disagrees. It is well recognized that almost all statutes and decisions discriminate and classify, but there is a need for permissible classifications. Residency can be a permissible classification if there is a rational basis for the classification.[7] Plaintiff maintains that the residency classification itself would be invalid. The court finds, as the Supreme Court found in *County Board of Arlington County, VA,* that the Commissioners' decision on its face meets the rational basis test. The court finds that plaintiff cannot state a claim upon which relief can be granted either under the law or the facts of this case. Accordingly, the court GRANTS defendants' motion to dismiss plaintiff's equal protection claim.

### III. MOTION FOR A STAY

The court, having denied Langley's motion for reconsideration, finds there is no reason to enjoin any condemnation proceedings or to stay its June 6, 1990 order. Accordingly, the court also DENIES plaintiff's motion for a stay.

### IV. CONCLUSION

For the reasons stated above, plaintiff's motion to amend its complaint to add an equal protection claim is GRANTED, plaintiff's motion for reconsideration is hereby DENIED, and plaintiff's motion for a stay is DENIED.

SO ORDERED.

---

**6.** The durational residency requirement has been examined in the context of the right to interstate travel, or in connection with other specific constitutional rights.

**7.** The Supreme Court stated in *County Board of Arlington County, Va. v. Richards,* 434 U.S. 5, 7,

98 S.Ct. 24, 26, 54 L.Ed.2d 4 (1977), that "The Constitution does not outlaw these social and environmental objectives, nor does it presume distinctions between residents and nonresidents of a local neighborhood to be invidious."