No.    93-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ASSOCIATED STUDENTS OF THE
UNIVERSITY OF MONTANA, JIM SEARS,
ERIC HUMMEL, and JOHN MADDEN,

       Plaintiffs and Appellants,

   v.

THE CITY OF MISSOULA,

       Defendant and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

           Noel K. Larrivee, Larrivee Law Offices, Missoula,
           Montana; Bruce Barrett, ASUM Legal Services,
           Missoula, Montana

       For Respondent:

           Jim Nugent, Missoula City Attorney, Missoula,
           Montana

       For Amici Curiae:

           Phyllis A. Bock, Bozeman, Montana (Associated
           Students of Montana State University): Michael
           C. Riley, Dillon, Montana (Western Montana College)

FILED

OCT 21 1993

Filed: OCT 21 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  September 17, 1993

      Decided:  October 21, 1993

_____
            Clerk

Chief Justice J. A. **Turnage** delivered Opinion of the Court.

The Associated Students of the University of Montana, Jim Sears, Eric **Hummel** and John Madden seek injunctive and declaratory relief from two Missoula city ordinances which regulate parking in the residential areas adjacent to the University of Montana. They appeal from an order of the Fourth Judicial District Court, Missoula County, declaring the ordinances valid and ruling in favor of the City of Missoula. We affirm the District Court.

The issues are:

1. Whether the City of Missoula has authority to regulate and restrict parking in a certain residential district.

2. Whether a city ordinance which regulates and restricts parking in a residential district violates the Equal Protection Clauses of the United States and Montana Constitutions.

Prior to and during 1983, various residents of the neighborhood adjacent to the University of Montana (University) campus in Missoula asked the City for an ordinance relieving them of commuter motor vehicle traffic and parking problems. The University had experienced and is experiencing substantial growth in its enrollment, which adversely affected the quality of living in the residential neighborhood because of increased traffic and parking difficulties. The Missoula City Council (City) and its committees investigated and studied the situation for approximately three years (from January of 1983 through June of 1986) before passing city ordinance 2480, which created a procedure for establishing

2

specific on-street parking restrictions. The February 3, 1986 ordinance enables the City to enact a residential parking permit program, outlines the reasons for creating the program, enumerates the program guidelines and explains application procedures. It amended Title 10, Chapter 10.22 (Stopping, Standing, Parking) of the Missoula Municipal Code, by adding sections 10.22.250 through 10.22.290.

Using these laws, on June 2, 1986, the City next enacted ordinance 2505, which set up an on-street parking permit program to be used in residential areas adjacent to the University. Ordinance 2505 added section 10.22.300 to the Missoula Municipal Code, stating that commuter parking on the sides of some streets is prohibited between the hours of 8:00 a.m. and 5:00 p.m., Monday through Friday. Exceptions include parking on holidays, parking for vehicles with permits, and parking for emergency or service vehicles. The City established a $10 fine for each violation of the ordinance.

Under provisions of the ordinance, University area residential homeowners may purchase a parking permit for $10 and two guest passes a year for $5 each. Nonresidents may not purchase these permits.

On May 12, 1992, appellants sought an injunction prohibiting the City from enforcing the residential University parking district law and effectively requesting the court to declare the ordinances void. The Associated Students of the University of Montana (ASUM)

is an unincorporated association of students enrolled at the University; Jim Sears is a residential parking district resident; Eric Hummel is a student of the University: and John Madden is a faculty member of the University. Together, they asserted that the ordinances were created without requisite authority, that the parking permit program is an arbitrary, discriminatory and unreasonable misuse of the municipality's police powers, and that the parking program violates the Equal Protection Clauses of the United States and Montana Constitutions.

The District Court issued an opinion and order on April 5, 1993, upholding the ordinances. This appeal alleges that the court's opinion and order is erroneous.

The standard of review for this Court is set forth in Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 803 P.2d 601. We review a district court's findings of fact for clear error, and we determine whether its conclusions of law are correct. Steer, 803 P.2d at 603.

I

Did the City of Missoula have authority to regulate and restrict parking in a certain residential district?

Clearly, the laws of our state set forth authority for municipalities to establish parking plans such as the one at issue here. Pursuant and in addition to its general police powers, a municipality is free to enact ordinances which are not repugnant to

4

established law. See generally § 7-5-4101, MCA (police powers), and § 61-12-101(14), MCA (traffic and vehicle regulation). As the United States Supreme Court stated in Village of Belle Terre v. Boraas (1974), 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797, 804,

> [t]he police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

Specifically, our legislature has provided in § 7-14-4102, MCA, that city or town councils may "regulate and prevent the use or obstruction of streets . . . ." Section 61-12-101, MCA, analogously authorizes municipalities to reasonably "regulate the standing or parking of vehicles" and enact ordinances regulating "traffic, pedestrians, vehicles, and operators thereof . . . ." The Montana Constitution supports a liberal construction of these and other powers granted to local municipalities by the legislature. See Art. XI, § 4(2), Mont.Const.; Tipco Corp., Inc. v. City of Billings (1982), 197 Mont. 339, 642 P.2d 1074.

Here, the City properly enacted both its enabling legislation, ordinance 2480, and the University residential parking district restrictions, ordinance 2505. Appellants go to great lengths to point out the origin of public street use in Montana and other places, continuing back to common law. This exhaustive history is irrelevant where our legislature has granted municipalities the statutory authority to create parking restrictions, and where our

5

constitution grants this authority to municipalities. Art. XI, §
4(2), Mont.Const.; §§ 1-1-108, 1-2-103, MCA.  The constitutional
and statutory language being clear and unambiguous, we conclude the
District Court did not err in ruling the City has appropriate
authority to enact parking district restrictions.


                                II

     Do city ordinances which regulate and restrict parking in a
residential district violate the Equal Protection Clauses of the
United States and Montana Constitutions?

     City ordinances, like statutes, are presumed to be valid.

     [W]hen considering the constitutionality of a statute,
     the constitutionality is presumed and anyone attacking
     the validity of a statute has a heavy burden of proving
     the invalidity.  [Citations omitted.]

     In establishing this test, Montana is in accord with every
     jurisdiction in the United States.  [Citations omitted.]

In the Matter of Kujath (1976), 169 Mont. 128, 130, 545 P.2d 662,
663-64; see also State v. Lorash (1989), 238 Mont. 345, 777 P.2d
884.  As the appellants and the City agree, the equal protection
challenge in this case involves neither suspect classes, quasi-
suspect classes, nor fundamental rights.  Accordingly, the
appropriate standard of review is whether the resident and non-
resident distinction is rationally related to a legitimate
government objective. See Tioco, 642 P.2d at 1078. To satisfy the
equal protection rational relationship test, challengers must prove
that the legislative facts on which the classification is based

                                6

could not reasonably be conceived to be true by the governmental decision maker. See Minn. v. Clover Leaf Creamery Co. (1981), 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659.

The instant issue is similar to the issue presented to the United States Supreme Court in County Board of Arlington County, Virginia v. Richards (1977), 434 U.S. 5, 98 S.Ct. 24, 54 L.Ed.2d 4. Richards involved a Virginia county zoning ordinance which provided for parking restrictions and permits in designated residential areas. Persons without a permit were prohibited from parking in the designated residential areas from 8:00 a.m. to 5:00 p.m. on weekdays.

Commuters who regularly parked in the residential areas filed suit against the county, alleging that the zoning ordinance was an unconstitutional denial of equal protection of the law. The Virginia Supreme Court held that the resident and nonresident classification was "invidious discrimination" while expressly noting that the ordinance "may relieve the [parking] problems" to which it was directed. On appeal, the United States Supreme Court rejected the conclusion that the resident and nonresident classifications resulted in invidious discrimination. The Court stated

> [t]o reduce air pollution and other environmental effects of automobile commuting, a community reasonably may restrict on-street parking available to commuters, thus encouraging reliance on car pools and mass transportation. The same goal is served by assuring convenient parking to residents who leave their cars at home during the day. A community may also decide that restrictions

7

> on the flow of outside traffic into particular residen-
> tial areas would enhance the quality of life there by
> reducing noise, traffic hazards, and litter. By defini-
> tion, discrimination against nonresidents would inhere in
> such restrictions. [Citations omitted.]
>
> The Constitution does not outlaw these social and
> environmental objectives, nor does it presume distinc-
> tions between residents and nonresidents of a local
> neighborhood to be invidious. The Equal Protection
> Clause requires only that the distinction drawn by an
> ordinance like Arlington's rationally promote the
> regulation's objectives. [Citations omitted.]

Richards, 434 U.S. at 7.

When determining the constitutionality of state law, other state courts, like Virginia's, have erroneously applied an equal protection standard more stringent than that sanctioned by the United States Supreme Court. See Idaho Dep't of Employment v. Smith (1977), 434 U.S. 100, 98 S.Ct. 327, 54 L.Ed.2d 324; Richardson v. Ramirez (1974), 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551; and Lehnhousen v. Lake Shore Auto Parts (1973), 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351. In each of those cases the United States Supreme Court reversed the state court, conclud-ing that the correctly applied legal standard upheld the constitu-tionality of the subject state law.

The City of Missoula has a legitimate interest in preserving the tranquility among University commuters and area residents. See Memphis v. Green (1981), 451 U.S. 100, 127, 101 S.Ct. 1584, 1600, 67 L.Ed.2d 769, 790 ("[t]he residential interest in comparative tranquility is . . . unquestionably legitimate"). It also has a legitimate interest in assuring homeowners ample parking space for

8

themselves and their guests. In addition, the City of Missoula has an interest in reducing noise, traffic hazards, and litter in its residential areas.

Furthering its interests, the City enacted ordinance 2480, which states as its objective adequate parking for University area residents. The record before us includes historical evidence behind the ordinances in question. Where, as here, an ordinance is lacking in purpose or clarity, it is helpful to analyze the legislative history when determining correct interpretation. See § 1-2-102, MCA. The minutes and testimony from the June 2, 1986 Missoula City Council meeting reveal several safety concerns, among them: safety of children: driveway and garage blockage: and poor visibility around corners because of parked cars.

These concerns lead us to conclude the resident and nonresident distinction in ordinances 2480 and 2505 rationally relates to the City's legitimate government interests, e.g., its objective interest in providing convenient parking for University area residents and its implicit interests in promoting tranquility among commuters and residents, reducing noise, reducing traffic hazards, and reducing litter. We therefore affirm the District Court.

_J. A. Turnage_
Chief Justice

We concur:

_John Conway Harrison_

_William E Hunt_

_[signature]_

_[signature]_

_[signature]_
Justices

Justice Karla M. Gray did not participate in this decision.

10